```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   EASTERN DISTRICT OF MICHIGAN

 3  UNITED STATES OF AMERICA,       )
                                    ) Case No. 22-20187
 4       vs.                        )
                                    ) Bay City, Michigan
 5  RICARDO DELGADO, II,            )
                                    ) March  28, 2022
 6       Defendant.                 )
    _____) 3:05 p.m.
 7

 8            TRANSCRIPT OF DETENTION HEARING
           BEFORE THE HONORABLE PATRICIA T. MORRIS
 9              UNITED STATES MAGISTRATE JUDGE

10  APPEARANCES:

11  For the Government:   TIMOTHY M. TURKELSON
                          United States Attorney
12                        Eastern District of Michigan
                          101 First Street
13                        Suite 200
                          Bay City, MI 48708
14
    For the Defendant:    RODNEY J. O'FARRELL
15                        Attorney at Law
                          1609 Court Street
16                        Saginaw, MI  48602

17

18

19

20  Recorded by:       Kristen Castaneda

21  Transcribed by:    Carol M. Harrison, RMR, FCRR
                       1000 Washington Avenue
22                     Bay City, MI  48708

23

24        TRANSCRIPT PRODUCED FROM DIGITAL VOICE RECORDING
             TRANSCRIBER NOT PRESENT AT LIVE PROCEEDINGS
25
```

<u>P R O C E E D I N G S</u>

(At 3:05 p.m., proceedings commenced.)

(Defendant present.)

THE CLERK: The Court calls the case of the United States of America versus Ricardo Delgado, Case No. 22-30150.

THE COURT: Good afternoon. Could I have the attorney appearances, please.

MR. TURKELSON: Good afternoon, Your Honor. May it please the Court, Tim Turkelson on behalf of the United States, and present with me is Assistant United States Attorney William Vailliencourt.

THE COURT: Thank you, Mr. Turkelson.

MR. O'FARRELL: Good afternoon, Your Honor. Rod O'Farrell on behalf of Mr. Delgado, who is standing to my immediate left.

THE COURT: Thank you, Mr. O'Farrell. So we're here today for purposes of a detention hearing. Everyone has the Pretrial Services report, I assume, unless I hear otherwise. And has the status of the case changed? Is the Government still moving for detention?

MR. TURKELSON: Government is moving for detention, Your Honor.

THE COURT: And the defense arguing for release?

MR. O'FARRELL: Yes, Your Honor.

THE COURT: All right. Very well. Then we can

1  proceed.
2          Go ahead, Mr. Turkelson. And as we've indicated in
3  the other prior cases related to this one, this case does carry
4  a presumption in favor of detention, right?
5          MR. TURKELSON: I would agree, Your Honor. And I
6  think the defendant recognizes that as well as he noted to
7  Pretrial Services when asked to be interviewed, "I know I'm not
8  going anywhere, so I don't want to waste anyone's time." I
9  would also agree with that sentiment.
10         Your Honor, this is a case in which we've had an
11 ongoing criminal investigation involving this drug trafficking
12 organization for just over a year now. During the course of
13 that year, we've executed numerous search warrants, and it's
14 become very apparent during the course of investigation that
15 Ricardo Delgado and Gregory Hayes are partners in the drug
16 trafficking organization and are responsible for distributing
17 kilos of cocaine and some heroin throughout the Saginaw region.
18         Investigation has shown that Delgado has a direct
19 line with coconspirators in Mexico, whom he works with to
20 obtain the controlled substances on a regular basis,
21 approximately every two weeks or so. It appears Delgado and
22 Hayes are working together to bring in more than 25 kilograms
23 of cocaine and, like I said, some heroin every two weeks.
24 Delgado and Hayes then use their own people whom they work with
25 to distribute the drugs.

1          The investigation revealed that Delgado relied
2    heavily on Austin Saucedo, Jonathan Coronado, and Aristeo
3    Delgado to assist him in distributing the drugs.  Delgado has
4    been also overheard commenting to have -- that he has shooters
5    working for him and he wants to get more shooters.
6          The investigation has also revealed that Delgado
7    rarely, if ever, distributes the controlled substances in
8    amounts less than kilograms.  Every now and then he'll break a
9    kilo in half, but the vast majority of the time he deals solely
10   in kilograms of cocaine.
11         On March 22nd of 2022, agents were continuing to
12   monitor several lines of Mr. Delgado, and on that particular
13   occasion, agents became aware of the fact that Jonathan
14   Coronado, again one of Mr. Delgado runners or assistants, had
15   tried to sell a kilogram of cocaine and he was ripped off or he
16   was robbed on that occasion.
17         After informing Delgado of the robbery, Delgado told
18   Coronado that he needed to go back and shoot up -- shoot the
19   place up.  During intercepted calls of Delgado, he was further
20   overhead -- overheard telling Coronado that he needed to have
21   one in the chamber, and you need to have at least two loaded
22   magazines and hopefully you can dump both magazines.
23         Delgado was also overheard telling Hayes about the
24   robbery and telling Hayes that he told Coronado that he needed
25   to go lay them down.  Agents believe that this was meant to

indicate that Coronado was told he needed to kill these people.

Based on the obvious threats, agents immediately notified uniformed officers in the City of Saginaw to respond to the area of the suspected shooting. Agents also responded to that area as well. Delgado could even be overheard on the phone indicating that he was surprised about the presence of law enforcement in the area.

It was also of an assistance that Delgado, over his own phone, proceeded to tell Coronado how to get to the location because that's what let law enforcement also know how to get to the location.

We believe that Saucedo was involved in this attempted shooting as a lookout. Officers stopped Saucedo and Delgado who were in separate vehicles. Officers didn't at that time disclose the existence of the wire, but told Saucedo and Delgado that they were stopping all vehicles in the area because they were having problems in the area.

Officers at that point -- and our agents weren't necessarily sure how we were going to proceed with the wire at that point. However, we realized we didn't get the shooter or the proposed shooter, which was Coronado. And at that point, Your Honor, it was decided that we were going to have to take down and arrest -- take the wire down and arrest Delgado and his associates.

As Delgado drove away on this particular occasion, he

 1  could be overheard on the wire saying to Hayes that these
 2  things are dirty, don't talk on them and we have to meet.
 3              This is not the first time that Delgado has felt --
 4  has been robbed, and it's not the first time he's threatened to
 5  harm those who have robbed him.  Delgado, in I believe February
 6  of this year, had a vehicle with a trap in the vehicle, and I
 7  think traps are a consistent theme in this case in terms of the
 8  vehicles, in terms of the homes, in terms of Delgado's own
 9  personal home, in terms of vehicles that Delgado operates.
10  Traps are a consistent theme that are used to hide drugs, guns
11  and money.
12              As I was saying, he had a vehicle that contained a
13  trap that was able to contain approximately 15 kilos of
14  controlled substances.  Delgado was very angry with the fact
15  that his vehicle was stolen, the vehicle that contained the
16  trap was stolen, and that whoever did it actually broke into
17  the trap and took the cocaine out.
18              Delgado was able to make arrangements to get the
19  vehicle back from the Chicago area and that also involved a
20  potential Chicago policeman who assisted in getting the vehicle
21  back.  And Delgado then discussed with Hayes the fact that he
22  had a suspicion of who the person was that ripped him off.  He
23  wanted to enact revenge against that person, but that person
24  was related to his source in Mexico and he would never get the
25  green light.  So it wasn't that he wasn't willing to enact

```
 1  revenge, it's just that he couldn't get the green light to do
 2  so.
 3            Shortly after this purported shooting or this
 4  potential shooting on March 22nd, agents went ahead and
 5  arrested Delgado and his three -- or two of his associates at
 6  the Flying J gas stop or gas station on -- off 75 there in
 7  Saginaw and, shortly thereafter, they arrested Hayes, who was
 8  at a Lowe's, and they eventually arrested Coronado, who was
 9  going to Delgado's House on Dixie and was found with a gun.
10            Agents also executed approximately six search
11  warrants on that late evening in the early hours of March 23rd.
12   Specifically, when they hit Delgado's house, they located in
13  excess of 13 1/2 kilograms of cocaine, which certainly supports
14  what agents were hearing over the wire and hearing over the
15  phone, Delgado consistently making arrangements for in excess
16  of 20, 25 kilos every several weeks, and that certainly
17  confirms that that was the amounts that we were dealing with.
18            They also located in a step on the stairs that had a
19  magnetic switch on it that was controlled with sort of a --
20  like a car key fob that would engage or disengage the
21  electronic magnet, in that step they found in excess of
22  $200,000.  They found guns.  They also found approximately 13
23  guns at the residence.  In addition to guns, they found
24  silencers or suppressors, and they also found switches that
25  would allow a semiautomatic weapon to fire as an automatic
```

1  weapon.
2           At Hayes' houses they located two kilos of cocaine
3  and about $25,000 of cash in addition to some additional
4  firearms.  This is an extensive conspiracy.
5           This Court has recognized, as the Court of Appeals
6  has recognized, that those who distribute controlled substances
7  per se pose a danger to the community.  Delgado and Hayes are
8  the tip of the spear that is involved in this conspiracy.
9  Without Delgado and his connections to Mexico, they don't have
10 a successful drug conspiracy.  He is -- and Hayes are the
11 people that make that work.  He is and remains a danger to the
12 community.
13          But especially is -- to highlight that is the fact
14 that Delgado himself orders a shooting when he gets ripped off.
15 And not only orders the shooting but goes to the area of the
16 shooting to help ensure that it's done.  Tells Coronado, make
17 sure you got one in the chamber, unload both magazines on him.
18 So not only does he sell drugs, he imposes violence to help
19 ensure his sale of drugs in the community, and all the proof of
20 this are Delgado's own words.
21          The word on the street right now, Judge, is that
22 Delgado and those associated with him are trying to find out
23 who cooperated to, again, enact revenge.  Well, there's one
24 person Delgado should be looking at, and that's the mirror.
25 It's Delgado's own words that have sunk him and will continue

1  to sink him throughout the course of not just this hearing, but
2  as we move forward.
3              And what's especially troublesome is Delgado, this
4  isn't his first go-around.  Your Honor's had a chance to look
5  at this criminal history.  Pretrial Services has had a chance
6  to examine his criminal history.  They've recommended that he
7  not be permitted bond.  I think their recommendation is exactly
8  right.  This is a guy who's been to federal penitentiary on no
9  less than two occasions for distribution of cocaine, exactly
10 what he's here for now.  Possessions of weapons in the
11 furtherance of distribution of controlled substances, exactly
12 what he'll be charged with here.
13             Now, I recognize he's not charged yet with those
14 counts because it's just a complaint, but upon the indictment,
15 that's exactly what he's looking for -- looking at in this
16 case.
17             He certainly is eligible for enhancement under the
18 851 statute, and so he's looking at a minimum of 15 years on
19 the drug conspiracy charges, coupled with additional penalties
20 for the possessing firearms in the furtherance of the drug
21 conspiracy.  This is a defendant who not only poses a risk,
22 that is willing to enact revenge to further those risks and
23 those dangers that he poses, Your Honor.  I haven't even
24 touched on his state criminal history, because I don't think
25 it's necessary.

1              He's absolutely a risk to the community.  I don't
2    believe he should be entitled to bond.  I think we've proven by
3    clear and convincing evidence that he doesn't have -- doesn't
4    deserve the benefit of a bond in this particular case, Your
5    Honor.
6              Thank you.
7              THE COURT:  Thank you, Mr. Turkelson.
8              Go ahead, Mr. O'Farrell.
9              MR. O'FARRELL:  Thank you, Your Honor.  I won't take
10   up much of the Court's time.  Unfortunately, of course, with
11   the stance of the case at this point, I have no discovery.
12             The complaint did not refer to the extensive
13   months-long investigation as described, and I think there are
14   questions in regard to the accuracy of the complaint and
15   inconsistencies within the complaint which could be raised at
16   the appropriate time.
17             And, as I have explained to my client, the issue can
18   again be taken up as far as pretrial release if there is a
19   change in circumstances, which might become evident as the
20   discovery is disclosed and the question of the legality of the
21   investigation in terms of its phases and authorizations can be
22   taken up to see what's left that is actually admissible against
23   my client.
24             With that, Your Honor, unless the Court had some
25   question for me, I have no further comment.

```
 1              THE COURT:  All right.  Thank you, Mr. O'Farrell.
 2              In looking at the factors under -- I should have
 3   asked, Mr. Turkelson, did you have anything you wanted to say
 4   in rebuttal?
 5              MR. TURKELSON:  No, Your Honor.  Thank you though.
 6              THE COURT:  All right.  Thanks.  In looking at the
 7   factors under Section 3142(g), first is the nature and
 8   circumstances of the offense charged, and here we do have a
 9   presumption in favor of detention.
10              As to the weight of the evidence against the person,
11   of course, that's the weight of the evidence of dangerousness,
12   not the weight of the evidence of guilt here in the Sixth
13   Circuit.
14              As far as the history and characteristics of the
15   person, those include all of the things that are addressed here
16   in the Pretrial Services report.  Obviously, this defendant
17   does have good connections to the -- to the area.  He's lived
18   here, has family here, does have a job here with Unique
19   Transport, which I assume he's doing the car sales, buying and
20   selling cars.  Decent health.
21              And when it comes to his record then, which is one of
22   their larger things that are looked at under this particular
23   factor under 3142(g), this defendant does have an extensive
24   history.  He has several controlled substance convictions,
25   possession with intent to deliver, a prior conspiracy to
```

1  possess with intent to deliver and -- as the most recent one,
2  which was the 2013, the same controlled substances with
3  possession with intent to deliver, and he was on supervised
4  release from this -- from that case, the 2013 case, at the time
5  of the instant offense.
6          He also has a felony weapons conviction.  In that
7  case, that was the one where the -- it was a state case, where
8  the felony kidnapping he was found not guilty, but he was found
9  guilty of the felon in possession.  So certainly his history is
10 one of controlled substance delivery in the past and drug
11 trafficking.  He also has one failure to appear, and an instant
12 where he fled on foot.
13         As the Government noted, there's the 851 enhancement
14 that's possible here and some additional charges.
15         So as everyone is aware, the standard is lower when
16 it comes to the risk of nonappearance.  This defendant is
17 facing severe penalties and additional charges, as well as with
18 the prior situation where he fled and one failure to appear.
19 The Court could find that there are no condition or combination
20 of conditions that could reasonably assure his appearance based
21 on that lower preponderance of the evidence standard.
22         Also in this case, though, I think the more important
23 argument which was focused on by counsel, both counsel, is the
24 level of danger -- dangerousness, and in this case, this is one
25 of those scenarios that I think Congress was absolutely

1  contemplating when they set the presumption in favor of
2  detention because they -- it was their thinking, and it's borne
3  by this -- facts in this case, as proffered by the Government,
4  that continued drug trafficking is a per se danger to the
5  community.
6            In this case, it's apparent that when you mix large
7  quantity of drugs with weapons, it is dangerous.  It's a
8  dangerous business.  Here, in particular, we have Mr. Delgado
9  is the person who had the connection to Mexico to provide the
10 supply.  He was dealing in big quantities and, you know, never
11 hardly less than a kilogram.  It was rare for them to deal in
12 anything less than that.
13           He is moving a large quantity of drugs, you know, 25
14 kilos every two weeks through his chains of suppliers dealing
15 back to -- going back to Mexico.  This is a large cash, large
16 drug operation.  Firearms are a part of the situation.
17 Firearms were found pursuant to search warrants in homes, on
18 people.
19           It appears, anyway, from the proffer that Mr. Delgado
20 is the one who has shooters available to him that work for him
21 if someone should -- like -- like was done and is alleged in
22 this instance Mr. Coronado was robbed, and so it was
23 Mr. Delgado who was the one who had the power to order up --
24 order up the shooting, as the Government noted, with his own
25 voice because they had the wiretap on the phone telling

1  Mr. Coronado to shoot the house up and to, you know, empty
2  the -- empty the two magazines as well as the one in the
3  chamber and to lay them down.
4          Mr. Delgado was also the one smart enough to figure
5  out that not to talk on the phones because they were dirty,
6  which was true, and there was another allegation of Mr. Delgado
7  talking to Hayes about getting revenge for another misdeed that
8  was done to the organization, but that he was unable to get the
9  green light or the okay from his connections in Mexico to do it
10 so they -- Mr. Delgado has been, unfortunately for him, at
11 the -- at the heart of the allegations involving exacting
12 revenge on those that either steal from or otherwise harm the
13 drug conspiracy that is going on here.
14         And so of all -- of all the people, this is a -- this
15 is a -- this is a dangerous conspiracy in and of itself, and of
16 all the people, Mr. Delgado is -- is probably the most
17 powerful, perhaps the smartest, and the most important person
18 in the group; and, unfortunately for Mr. Delgado, that means
19 he's also the one with the most power to exact dangerous --
20 dangerous things like the shootings that were contemplated
21 here.
22         And so under this -- under these circumstances,
23 there's just -- it would be impossible for the defense, as good
24 as defense counsel is, to rebut the presumption in favor of
25 detention.  And because I find that there is no condition or

1  combination of conditions that I could put in a bond to allay
2  the danger that this defendant poses to the community should he
3  be released, he will be ordered detained pending trial.
4      Anything further for this record, Mr. Turkelson?
5      MR. TURKELSON:  Nothing, Your Honor.  Thank you.
6      THE COURT:  Anything from you, Mr. O'Farrell?
7      MR. O'FARRELL:  No, Your Honor.  Thank you.
8      THE COURT:  All right.  Thank you very much.
9      (At 3:25 p.m., court recessed.)

13      * * * *
14      C E R T I F I C A T E
15  I certify that the foregoing is a correct transcript from the digital sound recording of the proceedings in
16  the above-entitled matter.

19  Date: 6-29-2022    Carol M. Harrison, RMR, FCRR
    Official Court Reporter
20      United States District Court
    Eastern District of Michigan
21      1000 Washington Avenue
    Bay City, MI  48708