## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## NORTHERN DIVISION

United States of America,

      Plaintiff,

                            Case No. 22-cr-20187
                            Hon. Thomas L. Ludington

    -vs-

Ricardo Delgado, D-1,

      Defendant.

_____

## DEFENDANT (D1) RICARDO DELGADO'S
## MOTION TO SUPPRESS EVIDENCE
## AND REQUEST FOR *FRANKS* HEARING

_____

**NOW COMES** Defendant Ricardo Delgado, II by and through his attorney Edward Martell, Esq., and respectfully requests this Honorable Court to enter an order for a *Franks* hearing and to suppress any and all evidence obtained from and derivative of various search warrants and wiretaps, for the reasons set forth in the attached brief.

Defendant has standing to challenge the admission of this evidence as the Defendant is an "aggrieved person" as to all intercepted wire communications under 18 United States Code 2510(11). The Defendant is alleged to be a party to at least

i

one conversation, the Defendant is alleged to be a party against whom the interception was directed, and the Defendant is alleged to be the owner of the phone(s) that were tapped.

Specifically, Defendant Delgado is requesting that the Court enter an Order suppressing all wiretap evidence, as well as the poisonous fruit thereof; suppress all evidence obtained via the illegal search warrants dated February 20, 2022 February 28, 2022, and March 2, 2022, and prohibit introduction into evidence or any references thereto at the trial of these matters; and for any and all other just and proper relief to which the Defendant is entitled. Evidence to be suppressed includes but is not limited to:

a. Communications intercepted during the course of the wiretap;

b. References to communications intercepted during the course of the interception;

c. Any notes taken by agents of the government in the course of conducting the wiretap;

d. Any summaries or transcripts prepared in the course of conducting the wiretap;

e. Any voice identifications of participants in conversations performed by agents of the government in furtherance of authenticating any of the conversations;

f. Any and all evidence obtained as a result of the search of the residences, offices, or buildings of the Defendant; any and all evidence obtained as a result of any search of the Defendant; any and all evidence obtained as a result of the search of any vehicles of the defendant, where the application for search warrant or the stop and resulting search was

premised in whole or in part, upon evidence obtained in the course of conducting the wiretap.

g. Any and all subsequent search warrants related to the address on Dixie Court in Saginaw that were obtained utilizing the unlawfully obtained search warrants from February 20, 2022, and February 28, 2022.

Pursuant to Local rule 7.1, Defense has sought concurrence from the Government, however, unsuccessfully. Therefore, we humbly submit Defendant's Motion to Suppress for this Honorable Court's review and consideration.

**WHEREFORE**, Defendant Ricardo Delgado respectfully requests that this Honorable Court conduct a *Franks* hearing on these matters, and enter an Order suppressing all wiretap evidence, as well as the poisonous fruit thereof; suppressing all evidence obtained via the illegal search warrants dated February 20, 2022 February 28, 2022, and March 2, 2022, and prohibit introduction into evidence or any references thereto at the trial of these matters; and for any and all other just and proper relief to which the Defendant is entitled.

Respectfully submitted,

*s/ Edward Martell, Esq.*
EDWARD MARTELL, ESQ.
Attorney for D-1 Ricardo Degado, II
615 Griswold Street, Suite 400
Detroit, MI 48226
313-964-1702
emartell@perkinslawgroup.net

Dated: May 2, 2023

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

United States of America,

       Plaintiff,

                                    Case No. 22-cr-20187
                                    Hon. Thomas L. Ludington

       -vs-

Ricardo Delgado, D-1,

       Defendant.

---

**BRIEF IN SUPPORT OF**
**DEFENDANT (D1) RICARDO DELGADO'S**
**MOTION TO SUPPRESS EVIDENCE**
**AND TO REQUEST A FRANKS HEARING**

1

## TABLE OF CONTENTS

TABLE OF AUTHORITIES......................................................................3

ISSUES PRESENTED...........................................................................5

STATEMENT OF CONTROLLING AUTHORITIES..............................6

STATEMENT OF FACTS: .....................................................................7

ARGUMENT ......................................................................................11

   I.   THE GOVERNMENT FAILED TO SHOW PROBABLE CAUSE FOR THE
FEBRUARY 20, 2022, AND FEBRUARY 28, 2022, SEARCH WARRANTS..11

     a.   The United States Failed to show sufficient nexus as required for probable
cause......................................................................................11

     b.   The Good Faith Exception does not apply. ................................13

   II.   THESE STATEMENTS MADE IN RECKLESS DISREGARD FOR THE
TRUTH ENTITLE DEFENDANT TO A *FRANKS* HEARING. ........................16

   III.   THE UNITED STATES FAILED TO MEET THE TITLE III NECESSITY
REQUIREMENT FOR THE WIRE COMMUNICATION INTERCEPTIONS. 17

     a.   Title III Necessity Requirements................................................17

     b.   The United States used boilerplate and conclusory language in the
affidavits. ..............................................................................19

     c.   The Government failed to meet the requirement of attempting to employ
normal investigative techniques. ................................................20

REQUEST FOR RELIEF: .....................................................................23

## TABLE OF AUTHORITIES:

### Cases:

*Brown v Illinois,* 95 S. Ct. 2254 (1975).

*Dalia v. United States*, 441 U.S. 238 (1979).

*Franks v. Delaware,* 438 U.S. 154 (1978).

*United States v. Alfano*, 838 F.2d 158, 163 (1988).

*United States v. Bailey*, 607 F.2d 237, 241, n. 11 (9th Cir. 1979).

*United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009).

*United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004)

*United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016).

*United States v. Giordano*, 416 U.S. 505, 526-527 (1974).

*United States v. Gonzalez, Inc*., 412 F.3d 1102, 1108 (9th Cir. 2005).

*United States v. Ippolito*, 774 F.2d 1482, 1486 (9th Cir. 1985).

*United States v. Kalustian*, 529 F.2d 585, 588 (9th Cir. 1976).

*United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir) *cert. denied* 434 U.S. 855 (1979).

*United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005).

*United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015).

*United States v. Powell*, 943 F. Supp. 2d 759, 781 (E.D. Mich. 2013), aff'd, 847 F.3d 760 (6th Cir. 2017).

*United States v. Rice*, 478 F.3d 704, 706 (6th Cir. 2007).

*United States v. Schultz,* 14 F.3d 1093, 1097 (6th Cir. 1994).

*United States v. Weaver,* 99 F.3d 1372, 1380 (6th Cir.1996).

*Wong Sun v. United States,* 83 S. Ct. 407 (1963).

**Statutes:**

18 U.S.C. § 2510(11).

18 U.S.C. §§ 2518(1) and (3).

18 U.S.C. § 2515.

## **ISSUES PRESENTED:**

I.    Probable cause must be established to issue a search warrant. Here, the affidavits were heavily redacted, relied on investigation of unrelated Co-Defendants, and lacked sufficient nexus to establish necessary probable cause. Did the search warrants for telephone records related to the phone number (313) 595-5921 and dated February 20, 2022, and February 28, 2022, lack probable cause based on insufficient nexus?

II.    Pursuant to *Franks v. Delaware*, a search warrant affidavit must not include statements made in reckless disregard for the truth. Here, the Government submitted multiple exaggerated statements, which absence these statements, the affidavits fall woefully short of probable cause. Is Defendant Delgado (D1) entitled to a hearing under *Franks v. Delaware,* 438 U.S. 154 (1978).

III.    Pursuant to 18 U.S.C. § 2518, the Government has the burden to exhaust all traditional investigative methods as part of parcel of the necessity requirements. Here, in obtaining a wiretap on (313)595-5921 in an application and affidavit dated March 2, 2022, the Government failed to even attempt traditional investigative methods. Did the Government's lack of investigation run afoul of 18 U.S.C. § 2518, and therefore, fail to meet the necessity requirements?

## **STATEMENT OF CONTROLLING AUTHORITIES:**

I.  *United States v. Powell*, 943 F. Supp. 2d 759, 781 (E.D. Mich. 2013), aff'd, 847 F.3d 760 (6th Cir. 2017) is the controlling authority for the nexus requirement of probable cause as applied to cell-cite tracking. *See also United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004).

II.  *Franks v. Delaware,* 438 U.S. 154 (1978), is the controlling authority for determining whether a hearing is required to present evidence regarding statements made by an affiant that included false statements or material omissions. *See also United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015).

III.  18 U.S.C. § 2518, or the 'necessity requirement' of Title III, is the controlling authority for determinations of whether the Government met their burden in exhausting other investigative procedures or determining why they reasonably appear to be unlikely to succeed if tried or too dangerous.

## STATEMENT OF FACTS:

Ricardo Delgado (*Hereinafter Delgado*) has been indicted on two counts of *Conspiracy to Possess with Intent to Distribute and to Distribute Cocaine*; one count of *Possession with Intent to Distribute Cocaine*; one count of *Possession of a Firearm in Furtherance of a Drug Trafficking Crime*; and one count of *Use of a Communication Facility*. This case involves a criminal investigation that has been ongoing since late 2021, However, Mr. Delgado was only recently brought into this matter.

Prior to filing the indictment, on February 20th, 2022. The United States requested a search warrant for the pen register/ GPS location for the phone number (313) 595-5921, which is alleged to belong to Mr. Delgado. According to the affidavit completed by Agent Troy Wohlfert, probable cause existed because of three (3) conversations that were overheard through a wiretap on a telephone alleged to belong to Gregory Hayes.

Notably, absolutely none of the conversations mention cocaine, gangs, or any other drug. The conversation involves two individuals, purported to be that of Delgado and Hayes, discussing dates. Wohlfert Aff. 5-6. Based upon only this language, Agent Wohlfert concluded that they were talking about their cocaine supplier. *Id.* at 6.

Similarly, the second conversation involved a similar vague and nebulous discussion. Based only upon this language, Agent Wohlfert concluded that Delgado "was indicating he heard that individuals in the Northside Gang in Saginaw, Michigan were travelling to Texas and getting kilogram quantities of cocaine for $25,000." *Id.* at 11. Ultimately, despite these exaggerated translations, this search warrant was granted.

On February 24, 2022, a pole camera was installed at 3390 Dixie Ct., Saginaw, Michigan, a residence that the Government purports to be the home[1] of Ricardo Delgado. Wohlfert Aff. 58. On February 28, 2022, the Government requested a warrant for information from cell towers within a 2-mile radius of this location in Saginaw, Michigan from 5:30pm to 6:15pm on February 24, 2022.

Specifically, as stated in Agent Wohlfert's affidavit, the purpose of this search warrant was to locate additional cellular devices that unknown male was purportedly using in connection with the alleged crimes. *Id.* at 10. This search warrant affidavit contains the same phone call transcripts as the February 20, 2022, affidavit, as well as a transcript from February 24, 2022. In this call, unknown male can be heard speaking Spanish in the background when he called Hayes and the two had a short exchange about Hayes not speaking Spanish. *Id.* at 9. This search warrant was granted.

---

[1] Notably, D1- Delgado's supervised release file indicates and has verified that he resides in Detroit, Michigan.

On March 2, 2022, only ten days after the Government began tracking the location on the phone purported to be Delgado's cellular device, a request was made for interception of wire communications on the phone number alleged to be D1-Delgado's. At this point in time, the government still had not identified Delgado and continued to refer to him as "Unknown Male utilizing Target Phone 6".

Within, Agent Wohlfert outlined the investigative methods, or lack thereof. The language is boilerplate, redundant, copy and pasted, and nearly identical to the language used in the previous wiretap affidavits. Specifically, Wohlfert states that physical surveillance 'rarely succeeds' but is being used in this investigation; he admits that **"investigators have not yet conducted physical surveillance on the Unknown Male utilizing Target Telephone 6**." Wohlfert Aff. 59. (Emphasis added).

Regarding confidential informants, Wohlfert stated that "It is my experience that confidential sources normally have limited information, either furnished by a subject or learned secondhand by others. I believe that this information would not, without the evidence sought by this application, result in a successful prosecution of all members of this illegal DTO." *Id.* at 39. Similar template language was used to explain why the Government opted not to utilize undercover agents in their investigation. *Id.* at 47.

Further, Wohlfert states that "attempts to determine a way to successfully conduct a trash pull have been unsuccessful" due to the "close-knit" nature of the

neighborhoods. *Id.* at 57. However, based upon the location of the home, and the installation of pole cameras, we know this statement to be false. However, 3390 Dixie Ct. is located right off Dixie Highway, and a trash pull could have been easily accomplished without detection. (*See attached Exhibit, Map Image of 3390 Dixie Ct.*).

Most notably, the Government the affidavit did submit the following: ***"No locations have been identified for the Unknown Male utilizing Target Telephone 6 in which he stores controlled substances. . ."*** *Id.* at 49. (Emphasis added). Despite failing to meet the necessity requirements, the March 2, 2022, warranty was granted, and the Government began intercepting phone calls for (313 595-5921.

On March 11, 2022, nine days after the interception began and less than three weeks after the government began tracking (313) 595-5921, the Government requested interception of electronic communications on the phone. The language in this affidavit was, again, vague, and nebulous. According to this affidavit, the Government compared images of Delgado from the pole camera installed at his residence with his Michigan Secretary of State picture, with his residence being identified through location information and county records – all traditional investigative measures – which could have been utilized prior to seeking the March 2, 2022, warrant. This interception request was also granted.

## ARGUMENT:

I.   **THE GOVERNMENT FAILED TO SHOW PROBABLE CAUSE FOR FEBRUARY 20, 2022, AND FEBRUARY 28, 2022, SEARCH WARRANTS.**

### a. The United States Failed to show sufficient nexus as required for probable cause.

"[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are 'seizable by virtue of being connected with criminal activity'; and second, 'that the items will be found in the place to be searched.'" *United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 555 n.6, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)); *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009). "There must, in other words, be a 'nexus between the place to be searched and the evidence sought.'" *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (quoting *United States v. Van Shutters*, 163 F.3d 331, 365–337 (6th Cir. 1998)). ***The connection must be specific and concrete, not "vague" or "generalized".*** *Id.* at 595. (Emphasis added). When determining if probable cause is met, the ***judge is limited to the "'four corners' of the affidavit***." *United States v. Powell*, 943 F. Supp. 2d 759, 781 (E.D. Mich. 2013), aff'd, 847 F.3d 760 (6th Cir. 2017). (Emphasis added).

"In sum, because 'the belief that the items sought will be found at the location to be searched must be supported by less than prima facie proof but more than mere suspicion,' to establish probable cause for long-term, real-time, cell-site tracking,

the government should have to demonstrate a nexus between a suspect and the phone, the phone and the criminal activity, as well as the criminal activity and suspect's location in protected areas, rather than *merely probable* cause *that the person is engaged in criminal activity*." *Powell,* 943 F. Supp. 2d at 779. **"While an officer's "training and experience" may be considered in determining probable cause, it cannot substitute for the lack of evidentiary nexus in this case."** *United States v. Schultz,* 14 F.3d 1093, 1097 (6th Cir. 1994)(internal citations omitted).

Here, the nexus requirement was not met for a couple of reasons. First, at the time of the search warrant the government had not yet identified Delgado and instead referred to him as "Unknown Male". Further, no nexus between the Delgado and the phone was established prior to warrant issuance. Even if this Court finds that there was a nexus between the suspect and the phone, there is no clear nexus between the phone and the criminal activity based on the information contained within the February 20, 2022, affidavit.

The conversations that are excerpted in the affidavit are extremely vague and nebulous - general in nature. Further, Agent Wohlfert's conclusions are completely uncorroborated. It seems that in crafting the affidavit, Agent Wohlfert in his overzealous quest for a conviction, heard what he wanted to hear – that is, he heard general conversations about traveling, meeting up with people, and even the weather,

and from these he extracted outlandish claims about gangs that were never identified in the conversations and cocaine that was never mentioned.

To be clear, as this Court is aware, an affidavit is limited to the four corners of the affidavit. Therefore, any other evidence that caused Agent Wohlfert to reach these exaggerated conclusions should have been included in the search warrant affidavit. Since it was not, this Court is bound by case law and must determine that the nexus requirement of probable cause was not met in regard to the February 20, 2022, search warrant. Because the subsequent February 28, 2022, and March 2, 2022, search warrants were both based upon both the same conversations and information obtained from the February 20, 2022, warrant, it is the fruit of a poisonous tree and must also be excluded.

### b. The Good Faith Exception does not apply.

The good faith exception to a finding of no probable cause does not apply in four scenarios: (1) when the warrant is issued on the basis of an affidavit that the affiant knows (or is reckless in not knowing) contains false information; (2) when the issuing magistrate abandons his neutral and detached role and serves as a rubber stamp for police activities; (3) when the affidavit is so lacking in indicia of probable cause that a belief in its existence is objectively unreasonable; and, (4) when the warrant is so facially deficient that it cannot reasonably be presumed to be valid. *United States v. Laughton*, 409 F.3d 744, 748 (6th Cir. 2005). In *Laughton*, 409 F.3d

at 751, the Sixth Circuit held that "a determination of good-faith reliance, like a determination of probable cause, must be bound by the four corners of the affidavit."

In this case, the first and third exceptions apply and thus any evidence obtained as a result of these warrants must be excluded. Clearly, the content of the phone calls alone was insufficient to establish probable cause for a search warrant. For these reasons, in his overzealous quest for a warrant, Agent Wohlfert "in his training and experience" concluded what was necessary to obtain a warrant.

Affidavits that are "so lacking in indicia of probable cause" have come to be known as "bare bones" affidavits. *United States v. Weaver,* 99 F.3d 1372, 1380 (6th Cir.1996). ***Such an affidavit contains only "suspicions, beliefs, or conclusions, without providing some underlying factual circumstances regarding veracity, reliability, and basis of knowledge....*" Weaver,* 99 F.3d at 1378. The standard by which an affidavit should be judged for purposes of the good faith exception "'is a less demanding showing than the "substantial basis" threshold required to prove the existence of probable cause in the first place.'" United States v. *Carpenter,* 360 F.3d 591 (6th Cir.2004)(quoting *United States v. Bynum,* 293 F.3d 192, 195 (4th Cir.2002). *The Sixth Circuit has displayed concern over the use of boilerplate and conclusory language in search warrants, especially since "it takes but a few minutes more for law enforcement authorities to obtain and include sufficient particularized*

14

*facts so that magistrates may perform their detached function fully informed.*"
*Weaver,* 99 F.3d at 1381.

This evidence should be suppressed for the same reason that it was suppressed in *Weaver.* There, the Sixth Circuit found that on an objective reasonableness standard, any prudent officer would have sought greater corroboration before applying for a warrant. *Id.* The officer in *Weaver*:

> "1) possessed no prior personal knowledge of any unlawful activity by this suspect, or at the suspect residence, other than an old conviction on completely unrelated circumstances; 2) possessed no present personal knowledge of any connection between this suspect and marijuana possession or distribution; 3) had not personally seen any marijuana at the suspect residence nor conducted any visual reconnaissance of the property to determine whether marijuana was likely to be present on the property; and 4) possessed only third-party hearsay information about a possible marijuana grow operation on the property." *Id.* at 1380.

Although this was a request for pen register/GPS phone location and not to search a residence, it is still applicable. The identity of the user of (313) 595-5921 had not been established at the time of warrant application, and no specific personal knowledge of any connection to any crime concerning Delgado had been established. The statements in the affidavit were not corroborated meaningfully;

15

there was no explanation of how Agent Wohlfert arrived at these conclusions. *See United States v. Helton*, 314 F.3d 812, 824 (6th Cir. 2003)(finding that good faith exception does not apply where statements relied upon for probably cause "were not corroborated in any meaningful manner.")

Again, the phone calls excerpted in the affidavits contained no mention of cocaine, or any other drugs, or of gangs; nevertheless, Agent Wohlfert leaped to the conclusion that these generalized conversations meant cocaine and the Northside gang. Put simply, Agent Wohlfert should have – and very well could have – done more. However, due to the Government's bare-bones affidavit, which alone falls woefully short of probable cause, this evidence must be suppressed.

## II. THESE STATEMENTS MADE IN RECKLESS DISREGARD FOR THE TRUTH ENTITLE DEFENDANT TO A FRANK'S HEARING.

"A defendant is entitled to a *Franks* hearing if he: 1) makes a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit; and 2) proves that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Pirosko*, 787 F.3d 358, 369 (6th Cir. 2015).

Here, it is objectively clear that in constructing the search warrant affidavits, Agent Wohlfert acted with a reckless disregard for the truth. As stated previously,

Agent Wohlfert provided no basis for his outlandish claims other than his "training and experience", which falls woefully short. If there was any other or additional evidence pointing to a conclusion that Delgado was talking about drugs and gangs, it should have been presented in the affidavit. These exaggerated conclusions regarding the topics of the phone calls excerpted in the warrant application were central to the finding of probable cause, and absent these statements, the application does not rise to the level of probable cause, and certainly would have been denied. For these reasons, a *Franks* hearing is appropriate.

## III. THE UNITED STATES FAILED TO MEET THE TITLE III NECESSITY REQUIREMENT FOR THE WIRE COMMUNICATION INTERCEPTIONS.

### a. Title III Necessity Requirements

Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §2510, et. seq. (The "Act") governs the use of governmental electronic surveillance. The Act attempts to balance the need for electronic surveillance against the risk that citizens will be subjected to unreasonable intrusions into their privacy. *United States v. Giordano*, 416 U.S. 505, 526-527 (1974). In order to obtain a wiretap, the government must adhere to requirements such as "strict adherence" and "utmost scrutiny." *Id.*, see also *United States v. Kalustian*, 529 F.2d 585, 588 (9th Cir. 1976). Essential to protecting the privacy of the public in the context of wiretap interception is the "necessity" requirement of 18 U.S.C. § 2518(1)(c). The statute

requires that each application for electronic surveillance provide "*a full and complete statement* as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." (Emphasis added).

The standard is reflected in 18 U.S.C. §2518(3)(c), which provides that the issuing judge shall determine whether "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to succeed if tried or to be top dangerous." The requirement "...was placed in the statute to ensure that a wiretap 'is not resorted to in situations where traditional investigative techniques would suffice to expose the crime.'" *United States v. Alfano*, 838 F.2d 158, 163 (1988), *quoting United States v. Kahn*, 415 U.S. 143, 153, n. 12 (1974). The requirement further ensures that **"*wiretaps are not to be used thoughtlessly or in a dragnet fashion*."** *Alfano*, 838 F.2d at 163 (Emphasis added).

Courts must give close scrutiny to applications challenged for non-compliance. This scrutiny has been recognized by the Supreme Court as an essential component of judicial review of government conduct. *See Dalia v. United States*, 441 U.S. 238 (1979) ("[T]he plain effect of the detailed restriction of Sec. 2518 is to guarantee that wiretapping or bugging occurs only when there is a genuine need for it and only to the extent that it is needed.").

To show necessity, the government must allege specific factual circumstances that render normal investigative techniques particularly ineffective for the specified target or the application must be denied. The specificity requirement prevents the government from making general allegations about classes of cases thereby sidestepping the necessity requirement altogether. Accordingly, ***the use of conclusory or boilerplate statements to make a showing of necessity constitutes inadequate compliance with the statute***. *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir) *cert. denied* 434 U.S. 855 (1979). (Emphasis added).

### b.  The United States used boilerplate and conclusory language in the affidavits.

"While the prior experience of investigative officers is indeed relevant in determining whether other investigative procedures are unlikely to succeed if tried, a purely conclusory affidavit unrelated to the instant case and not showing any factual relations to the circumstances at hand would be ... inadequate compliance with the statute." *United States v. Landmesser,* 553 F.2d 17, 20 (6th Cir.), *cert. denied,* 434 U.S. 855, 98 S.Ct. 174, 54 L.Ed.2d 126 (1977).

Here, the Government has relied primarily upon template and boiler plate language. In lieu of traditional investigative procedures, which is required under "The Act", the Government has provided this Court with uncorroborated excuses. Moreover, Agent Wohlfert's explanation of other investigative procedures is based

19

on his 'training and experience' and is "generalized and uncorroborated". *See United States v. Rice*, 478 F.3d 704, 706 (6th Cir. 2007).

For example, when explaining why physical surveillance was not enough, Wohlfert first stated merely that "[s]urveillance rarely succeeds in gathering evidence of the criminal activities under investigation" (43). He then went on to recall a time when *Townsend*, who *notably is unrelated and not even charged in either conspiracy count*, was raking his lawn while being surveilled and hypothesized that him raking his lawn must have meant he was aware of the surveillance. (44).

Further, Wohlfert heavily relies on generalized information about why certain techniques normally do not work in these types of investigations, and his reliance on the neighborhoods being 'close-knit' is uncorroborated and contradicted by the ability to install pole cameras in the same neighborhoods. These copy-and-paste allegations taken from previous affidavits are simply not adequate to establish necessity for a wiretap of Delgado's phone.

### c. The Government failed to meet the requirement of attempting to employ normal investigative techniques.

The Sixth Circuit and other Courts have declined to find necessity where investigations using traditional methods were brief. *See United States v. Rice*, 478 F.3d 704, 706 (6th Cir. 2007)(declining to find necessity where government requested interception 'within 10 days' of hearing a conversation); *See also United*

*States v. Gonzalez, Inc.*, 412 F.3d 1102, 1108 (9th Cir. 2005)(finding that necessity requirement was not met where there was five days of pen register/tap and trace surveillance and limited physical surveillance on the subject of the wiretap).

Here, the Government requested interception 10 days after beginning to track the location on the (313) 595-5921 phone, and only 5 days after installing a pole camera at 3390 Dixie Court. This was premature to say the least, especially considering Mr. Delgado was out of town celebrating Mardi Gras for a period of time during this range.

Ironically, in the March 11, 2022, affidavit, the government conceded that they were able to identify Delgado using the location information and the pole camera. Although the footnote states that the Government also used traced phone calls from the March 2, 2022, wiretap to identify Delgado, the explanation of the identification process heavily infers otherwise. This statement regarding the use of traced phone calls is misleading and appears to be an attempt by the government to protect themselves from a Title III violation for the March 2, 2022, wiretap. Accordingly, the March 2, 2022, wiretap was inarguably 'the initial step' in the investigation into Delgado's alleged involvement, and thus the evidence gained from the wiretap must be suppressed. *United States v. Giordano*, 416 U.S. 505, 515 (1974). Furthermore, and perhaps most egregiously, **the Government conceded in the affidavit that they had not exhausted traditional investigative methods**. (Emphasis added).

The Sixth Circuit has declined to find necessity where no physical surveillance was conducted on the subject. *Rice,* 478 F.3d at 711. The Government admits in the March 2, 2022, affidavit that "investigators "*have not yet*" conducted physical surveillance on the unknown male utilizing Target Telephone 6." (Aff 59). This implies that the Government was intending to conduct physical surveillance on Delgado; this means that the Government presumed that physical surveillance on Delgado could provide evidence of benefit to them, the value of which cannot be specified because it did not happen. This, paired with the Government's admission that they were able to make significant progress and identify Delgado *using traditional methods,* paints a picture that is clear as day: the Government, in their overzealous quest, rushed the investigation, thus, illegally obtained wiretaps without doing their due diligence. Because the Government did not conduct such physical surveillance before applying for the wiretap, and instead jumped the gun and requested the wiretap after a mere 10 days of location tracking and 5 days of pole camera surveillance, the wiretap was illegally granted, and all evidence obtained as a result thereof must be suppressed.

### d.  The remedy for Title III violations is suppression of the evidence.

In Title III, Congress enacted a statutory presumption against wiretaps which could only be overcome by first demonstrating necessity for a wiretap. *Giordano*, 416 U.S. at 515; *United States v. Ippolito*, 774 F.2d 1482, 1486 (9th Cir.

1985); *United States v. Bailey*, 607 F.2d 237, 241, n. 11 (9th Cir. 1979) *cert. denied sub. Nom Whitney v United States*, 445 U.S. 934 (1980). If the government fails to demonstrate necessity by failing to utilize or meaningfully consider traditional investigative techniques, suppression of wiretap evidence is the appropriate remedy and specifically required by statute. 18 U.S.C. §2515; *Giordano*, 416 U.S. at 527. Because the government has failed to demonstrate necessity, suppression is required in this case.

## REQUEST FOR RELIEF:

**WHEREFORE**, Defendant Ricardo Delgado respectfully requests that this Honorable Court conduct a hearing on these matters, and enter an Order suppressing all wiretap evidence, as well as the poisonous fruit thereof; suppressing all evidence obtained via the illegal search warrants dated February 20, 2022 February 28, 2022, and March 2, 2022, and prohibit introduction into evidence or any references thereto at the trial of these matters; and for any and all other just and proper relief to which the Defendant is entitled.

Respectfully submitted,

*s/ Edward Martell, Esq.*
EDWARD MARTELL, ESQ.
Attorney for D-1 Ricardo Delgado, II
615 Griswold Street, Suite 400
Detroit, MI 48226
313-964-1702
emartell@perkinslawgroup.net

Dated: May 2, 2023

23

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

United States of America,

      Plaintiff,

                        Case No. 22-cr-20187
                        Hon. Thomas L. Ludington

    -vs-

Ricardo Delgado, D-1,

      Defendant.

---

## <u>CERTIFICATE OF SERVICE</u>

    I hereby certify that on May 2, 2023, I electronically filed the foregoing document with the Clerk of the Court via the ECF filing system, which will send notification of filing to all attorneys of record.

                        Respectfully submitted,

                        *s/ Edward Martell, Esq.*
                        EDWARD MARTELL, ESQ.
                        Attorney for D-1 Ricardo Delgado, II
                        615 Griswold Street, Suite 400
                        Detroit, MI 48226
                        313-964-1702
                        emartell@perkinslawgroup.net

Dated: May 2, 2023