UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

          Plaintiff,                      Case No. 1:22-cr-20187-1

v.                                         Honorable Thomas L. Ludington
                                                 United States District Judge

RICARDO DELGADO II,

          Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT RICARDO DELGADO'S MOTION TO SUPPRESS AND FOR A *FRANKS* HEARING**

In early 2021, federal agents began investigating a suspected drug-trafficking conspiracy in Saginaw, Michigan. In the months that followed, the agents gathered information through confidential informants, controlled buys, physical surveillance, and wiretaps. A year into the investigation, the FBI had identified numerous coconspirators, but not the source of the drugs or everyone involved. To identify an unknown male coconspirator, the FBI sought search warrants to obtain GPS data for a cell phone he was using, as well as cell-tower data to locate a second cell phone the investigation led them to believe he was using. A few days later, the agents sought permission to wiretap the unknown male's phone. Soon after, the unknown male was identified as Ricardo Delgado II and indicted on five counts.

Delgado now seeks to suppress evidence obtained from the two search warrants and the wiretap of his cell phone. He alleges there was not sufficient probable cause for either warrant and that the Government did not establish the necessity of the wiretap, as required by statute.

**I.**

In February 2021, an FBI task force began investigating Codefendant Jarquaze Townsend for distribution of cocaine in Saginaw, Michigan. ECF No. 353 at PageID.1154. The ensuing

investigation involved controlled purchases of cocaine by confidential informants, surveillance by agents, and toll record analysis.[1] *Id.*

In December 2021, the FBI received court authorization to intercept wire and electronic communications on phones used by codefendants Townsend, Dominic Riley, and Gregory Hayes. *Id.* Through these interceptions, the FBI "identified Hayes as a supplier of controlled substances to" Townsend and intercepted "numerous calls . . . regarding the sale and distribution of controlled substances to and from" a phone number used by an unknown male ("Unknown Male"). *Id.*

Accordingly, the FBI sought search warrants related to Unknown Male's cell phones on February 20 and 28, 2022. *Id.* at PageID.1155. Then, on March 2, 2022, the FBI applied for court authorization to wiretap various devices, including one of Unknown Male's cell phones. *Id.* All three requests were granted. *Id.*

In March 2022, Unknown Male—then identified as Ricardo Delgado II—was arrested. ECF No. 244 at PageID.613. On September 7, 2022, he was indicted by second superseding indictment for two counts of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), possession of a firearm furthering a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A), and unlawful use of a communication facility, 21 U.S.C. § 843(b). ECF No. 176. His trial is scheduled to begin on September 28, 2023. ECF No. 356.

On May 2, 2023, Delgado filed a motion to suppress all the evidence the agents obtained from the searches and the wiretap.[2] ECF No. 320. Delgado alleges that the search warrants were

---

[1] Cellular providers are required to maintain "toll records" for 18 months, which show "the name, address, and telephone number of the caller, telephone number called, date, time, and length of the call." 47 C.F.R.§ 42.6.
[2] On May 25, 2023, Codefendant Austin Saucedo—an alleged "runner" for Delgado, ECF No. 333 at PageID.1055—filed a Notice of Joinder, concurring in the relief Delgado seeks. ECF No. 358.

issued without probable cause and that he is entitled to a *Franks* hearing because certain statements in the warrant affidavits were made with "reckless disregard for the truth." *Id.* at PageID.975. The Government contends the affidavits have probable cause and that Delgado is not entitled to a *Franks* hearing. ECF No. 353 at PageID.1156–62. As to the wiretap, Delgado argues all evidence from the wiretap should be suppressed because the FBI did not satisfy the statutory necessity requirement. ECF No. 320 at PageID.976–82. The Government disagrees there too. *See* ECF No. 353 at PageID.1162–74.

## II.

Delgado asserts there was not probable cause to support the search warrants dated February 20, 2022, and February 28, 2022, because the affidavits in support of both warrants failed to establish a "nexus between Delgado and the phone" and a "nexus between the phone and the criminal activity." ECF No. 320 at PageID.971 (cleaned up).

The Government responds that both affidavits established probable cause by demonstrating a nexus between the phone and criminal activity. ECF No. 353 at PageID.1156–62.

### A.

The Fourth Amendment protects people from unreasonable governmental searches and seizures by requiring a warrant based on probable cause, subject to some exceptions. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). This "is not a high bar: It requires only the 'kind of fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States*, 571 U.S. 320, 338, (2014) (quoting *Florida v. Harris*, 568 U.S. 237 (2013)).

In order to establish probable cause, the affidavit in support of a search warrant must present "facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Crumpton*, 824 F.3d 593, 615 (6th Cir. 2016); *see also United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (requiring a "nexus between the place to be searched and the evidence sought.").

**B.**

The February 20 Affidavit sought a search warrant for GPS data from Unknown Male's cell phone to identify him and largely relies on Agent Wohlfert's training, experience, and two intercepted phone conversations between Hayes and Unknown Male to establish probable cause.

February 18, 2022. The FBI intercepted a call in which Unknown Male told Hayes, "I might just have to call dude," Hayes responded affirmatively, but then Unknown Male said he would "wait until [he] hear[d] from him last minute." Agent Wohlfert avers that based on his training and experience as a special agent with the FBI, Hayes and Unknown Male were discussing an anticipated shipment of cocaine during the phone call and that Unknown Male concluded he was not going to contact the supplier and was going to wait until he heard from the supplier.

Later in the same call, Hayes said "Yeah, ahh, shit even if you got somebody else looking, I, I, still, I still got some laying around you what I mean[,] but I'm, I could get a call any minute you know what I mean," and then Unknown Male responded, "Yeah, me too, that's how I am. That's why I'm like, I'm in a hurry but I'm not at the same time you know what I mean." In this exchange, Wohlfert avers, Unknown Male and Hayes were discussing the possibility that they could run out of cocaine, and Hayes told Unknown Male that he still had some left if Unknown Male ran out and needed more.

head

The call ended after Unknown Male said to Hayes, "But I'm just waiting if, if dude calls I'll let you know. That's when you'll see me call again, but if not I'll just, ah, I'll just wait to hear from you." which Wohlfert avers is Unknown Male saying he would contact Hayes when he heard from their supplier.

February 20, 2022. The FBI intercepted a call in which Unknown Male said, "You know how the weather has been fucked up and shit?" Hayes responds affirmatively, and then Unknown Male explains that "they got delayed two days he told me so he said Monday or Tuesday, so I mean I know we got tomorrow to put something together that'd be good I be like good man I need them extra days." Hayes responded that he could "almost get that right now . . . but hopefully [would] get a call today or tomorrow early." According to Wohlfert, Unknown Male was telling Hayes that their supply of cocaine was delayed. Unknown Male then expressed to Hayes that he was glad to hear it because the delay gave him more time to collect the money to purchase it, and Hayes was responding that he had most of the money ready.

Later in the call, Unknown Male said that "somebody" told him that "some dudes on the north side said they went out of town and scored some at, ah, 25," Hayes responded that he heard the same information, and they discussed whether it was true. Then Unknown Male said, "[I]f we keep dropping them numbers it's starting to squeeze a lot of them out because a couple of them I heard ain't even making trips no more because they said it ain't even worth it no more." Based on his training, experience, and previously intercepted calls, Agent Wohlfert avers that Unknown Male and Hayes were discussing lowering the prices of their cocaine based on rumors that members of the Northside Gang went to Texas to purchase cocaine for $25,000.

Having outlined the content and meaning of these conversations, the February 20 Affidavit concludes that Unknown Male is using his cell phone to distribute controlled substances and

requests a warrant to obtain GPS tracking information to help identify Unknown Male and determine the extent of his involvement in the purported conspiracy.

Indeed, the information in the February 20 Affidavit could lead a reasonable officer to conclude there is a nexus between Unknown Male's phone and the alleged drug-trafficking activity, establishing probable cause. Unknown Male appears to have used his phone to discuss (1) contacting a drug supplier, (2) the likelihood he will run out of drugs to sell, (3) expecting a drug shipment, (4) competing drug dealers, and (5) adjusting prices. *See United States v. Sheckles*, 996 F.3d 330, 339 (6th Cir.) (holding that there is sufficient "nexus" between a phone's location data and criminal activity if evidence suggests that the phone is being used "in connection with" drug trafficking and the data would "likely yield useful evidence of criminal activity, including the distributor's identity"), *cert. denied*, 142 S. Ct. 717 (2021); *United States v. Wahid*, 69 F. Supp. 3d 696, 699 (N.D. Ohio 2014) (finding that probable cause existed for a warrant to track a phone's location data because a phone conversation suggested evidence of a crime and the "missing piece was the identity of the other participant" in the phone conversation), *aff'd*, 666 F. App'x 379 (6th Cir. 2016).

Delgado's counterarguments do not demonstrate otherwise. He argues there is not probable cause because the Affidavit does not articulate a nexus between *himself* and the target phone. ECF No. 320 at PageID.971. But "[t]he only probable cause necessary [for a search warrant involving a phone] is that the *phone itself* is being used in connection with an offense," *United States v. Sims*, 508 F. App'x 452, 460 (6th Cir. 2012) (emphasis added) (citing *United States v. Giacalone*, 853 F.2d 470, 478 (6th Cir. 1988)). And his contention that there is "no clear nexus between the phone and the criminal activity" also lacks merit, *see* ECF No. 320 at PageID.971, as the Affidavit

demonstrates a nexus between the thing to be searched—the target cell phone—and the criminal activity, namely cocaine trafficking.

In sum, the search warrant issued on February 20, 2022, was supported by probable cause, so no evidence stemming from it will be suppressed. *See United States v. Washington*, 380 F.3d 236, 240 (6th Cir. 2004) (noting that the "critical question" is whether the affidavit has a "sufficient nexus between the criminal activity observed and the" place to be searched).

### C.

The February 28 Affidavit sought a search warrant for cell-tower data related to 3390 Dixie Court in Saginaw, Michigan, to assist the FBI in identifying the additional cell phones they believed Delgado used. It integrates Agent Wohlfert's training experience, the two previously discussed phone calls, *see* discussion *supra* Section II.B, and three additional phone calls to establish probable cause.

February 19, 2022. Hayes contacted a potential customer to sell him 10 kilograms of cocaine. Hayes told the potential customer that his supplier "connected so cold when he talks to his people they talk, not Mexican, they talk some other shit." Agent Wohlfert averred that Hayes was telling the potential customer that his supplier is well-connected and does not get his cocaine from Mexico, but from a country "further into Central or South America."

February 24, 2022. At 5:54 PM, Unknown Male called Hayes but started to speak Spanish "in the background" instead of talking to Hayes, so only one side of the conversation could be heard. Three minutes later, Unknown Male called Hayes again, explaining that "they" had called him immediately after he had called Hayes earlier, and Hayes responds that he "heard that language" Unknown Male was speaking and decided to hang up. Agent Wohlfert avers that he interpreted the call as Unknown Male "apologizing to Hayes because he had called Hayes but their

supplier had [called] on another phone at the same time," suggesting Unknown Male was using a second, unknown cell phone for cocaine distribution.

Taken together with the two phone calls discussed before, *supra* Section II.B, the three additional phone calls provide sufficient grounds for a reasonable officer to conclude that Unknown Male was using a second cell phone for drug trafficking. The February 19 phone call suggests that Hayes's supplier speaks Spanish and gets cocaine from South America. Considered with the February 24 phone calls where Unknown Male was speaking Spanish to an unidentified person, Hayes's reaction suggests a shared understanding of what was happening. So it is reasonable to believe Unknown Male was utilizing a second cell phone for the drug conspiracy. Based on these inferences, Agent Wohlfert explained that his training, experience, and previously intercepted calls led him to believe that Unknown Male was likely using the second phone in the drug conspiracy, establishing probable cause. *See United States v. Sierra-Rodriguez*, No. 2:10-CR-20338-1, 2012 WL 1199599, at *6 (E.D. Mich. Apr. 10, 2012) (finding probable cause because affidavit provided substantial basis to conclude unknown cell phone belonged to person engaged in drug-trafficking conspiracy); *United States v. James*, 3 F.4th 1102, 1105 (8th Cir. 2021) ("Cell phones are common and, even if there was no direct evidence that the robber had one, criminals will, in the investigator's training and experience, use them to contact co-conspirators during or after committing a crime." (citing *United States v. Turner*, 953 F.3d 1017, 1020 (8th Cir. 2020))), *cert. denied*, 142 S. Ct. 1352 (2022). This led to the warrant issued on February 28, 2020, for the cellular-tower data related to 3390 Dixie Court in Saginaw, Michigan, to assist the FBI in "determining the unknown cellular devices" that Unknown Male used in the purported conspiracy.

Because the search warrant issued on February 28, 2022, was supported by probable cause, none of the evidence obtained from it will be suppressed.

### III.

Delgado also seeks a *Franks* hearing on both affidavits, alleging they were made with "a reckless disregard for the truth." ECF No. 320 at PageID.975. The Government disagrees. *See* ECF No. 353 at PageID.1156–62.

### A.

"[T]he obvious assumption" made regarding the probable-cause requirement "is that there will be a truthful showing." *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) (quoting *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)). A statement in an affidavit is deemed truthful if it is "believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165.

In order to obtain a *Franks* hearing, Delgado must (1) "make a substantial showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit," and (2) "prove that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). If the defendant satisfies both requirements, then the falsity or omission is set aside for the court to reevaluate whether the remaining content of the affidavit is "sufficient . . . to support a finding of probable cause." *Franks*, 438 U.S. at 171–72. If it is not, then the defendant is entitled to a *Franks* hearing under the Fourth Amendment. *Id.* at 172.

### B.

Delgado first asserts he is entitled to a *Franks* hearing on the February 20 Affidavit because "Agent Wohlfert acted with a reckless disregard for the truth" in writing the Affidavit. ECF No. 320 at PageID.975. He alleges Agent Wohlfert's "conclusion that Delgado was talking about drugs and gangs" is "exaggerated." *Id.* at PageID.976. But Delgado makes no showing that Agent

Wohlfert wrote the February 20 Affidavit while "subjectively 'entertain[ing] serious doubts as to the truth of his or her allegations.'" *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (quoting *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)). Thus, he has not satisfied the first requirement to hold a *Franks* hearing. Nor has he satisfied the second requirement. Even without Agent Wohlfert's "conclusions," the transcripts of the calls independently establish probable cause, as a reasonable person could conclude they demonstrate Hayes and Unknown Male discussing drug trafficking.

### C.

Delgado also seeks a *Franks* hearing on the February 28 Affidavit because "Agent Wohlfert acted with a reckless disregard for the truth" in writing it. ECF No. 320 at PageID.975. But, like his challenge to the February 20 Affidavit, Delgado has not shown that Agent Wohlfert wrote the February 28 Affidavit while "subjectively 'entertain[ing] serious doubts as to the truth of his or her allegations.'" *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019) (quoting *United States v. Cican*, 63 F. App'x 832, 836 (6th Cir. 2003)). Thus, he has not satisfied the first requirement for a *Franks* hearing. And again, even without the "conclusions" Delgado alleges are "exaggerated," the other call transcripts would be sufficient for a reasonable person to conclude Delgado was using a second cell phone in a cocaine-trafficking conspiracy.

### IV.

Lastly, Delgado challenges the March 2, 2022 order authorizing the wiretap of his phone. ECF No. 320 at PageID.978–82.

Delgado asserts the Government did not satisfy the necessity requirement it because "relied primarily upon template and boiler plate language" and did not first employ "normal investigative techniques." ECF No. 320 at PageID.978–80. The Government disagrees, contending that Agent

Wohlfert's affidavit not only explained the investigative techniques in "significant detail" but also discussed why certain techniques were unlikely to succeed. ECF No. 353 at PageID.1164.

### A.

Title III of the Omnibus Crime Control and Safe Streets Act of 1968 regulates the Government's use of wiretaps in criminal investigations. *See* 18 U.S.C. § 2510 *et seq*. "The basic standards for a wiretap are similar to those for a search warrant, but there also must be strict compliance with Title III of [the Act]." *United States v. Alfano*, 838 F.2d 158, 161 (6th Cir. 1988).

In order to seek authorization for a wiretap under Title III of the Act, a law-enforcement officer must first obtain permission from the United States Attorney General to apply to a federal judge for wiretap authorization. 18 U.S.C. § 2516(1).

If approved, then the officer must present a written application for a wiretap to a federal judge. *Id.* § 2518(1). A wiretap application must, among other things, "include . . . a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." *Id.* § 2518(1)(c).

After reviewing the application, the federal judge may authorize interception of wire, oral, or electronic communications after finding that:

> (1) there is probable cause to believe a crime enumerated in 18 U.S.C. § 2516 is being committed,
> (2) there is probable cause to believe that communications related to that offense will be intercepted through the wiretap, and
> (3) the wiretap is necessary.

*See id.* § 2518(3). To satisfy this "necessity" requirement, the Government must show:

> (1) the wiretap is not the investigation's "initial step"
> (2) traditional techniques would not suffice, and

>(3) if investigators rely on prior experiences in explaining the inadequacy of traditional techniques, that those experiences relate "to the particular facts of the investigation at hand."

*United States v. Mosley*, 53 F.4th 947, 953 (6th Cir. 2022) (quoting *United States v. Gardner*, 32 F.4th 504, 515–17 (6th Cir. 2022). District courts get "considerable discretion" in determining whether the necessity requirement has been satisfied. *United States v. Young*, 847 F.3d 328, 343 (6th Cir. 2017) (quoting *United States v. Stewart*, 306 F.3d 295, 304 (6th Cir. 2002)). "[W]here a warrant application does not meet the necessity requirement, the fruits of any evidence obtained through that warrant must be suppressed." *United States v. Rice*, 478 F.3d 704, 710 (6th Cir. 2007). The moving party bears that burden "of production and persuasion." *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir. 1998).

B.

The wiretap application was not "premature," as Delgado argues. *See* ECF No. 320 at PageID.980. It details all investigative techniques that were used or considered in the year-long investigation leading up to the wiretap of Delgado's phone, showing the necessity of the wiretap.

First, Agent Wohlfert explained that confidential informants were not useful in this part of the investigation, because they did not have direct access to Unknown Male. He he explained that, similarly, undercover agents would likely not have direct access to Unknown Male.

Agent Wohlfert also discussed using controlled buys to investigate the conspiracy. He noted that it was not a technique that was useful in identifying the source of the drugs or the conspiracy's leaders. And he detailed a previously executed controlled buy where a suspected coconspirator identified a surveillance team. According to Agent Wohlfert, the suspects had so far proven to be "extremely cautious and aware of law enforcement surveillance," detailing multiple

- 12 -

instances[3] where suspects had identified surveillance teams. Thus, he concluded, the physical surveillance attempted earlier in the investigation was unlikely to be useful here.

Agent Wohlfert also explained how search warrants had already been used in the investigation, noting that 10 days earlier the FBI had obtained a search warrant to track GPS data from Unknown Male's cell phone. He also explained that though pen registers, toll analysis, and cell-subscriber information had been used in the investigation, they were not always useful because coconspirators often use multiple phones and fake names to register them.

Agent Wohlfert next detailed how the FBI had used 11 pole cameras to surveil suspected coconspirators, but the footage lacked necessary context. He specifically detailed a meeting on February 24, 2022, between Delgado and Hayes that was recorded by the pole camera. But the agents did not know what the meeting was about.

Next, Agent Wohlfert averred that using interviews or grand-jury subpoenas would not be useful considering the little information yielded from previous attempts to interview suspected coconspirators. Agent Wohlfert also noted that trash pulls not only were too risky given the close-knit nature of the neighborhood but also would likely not reveal the source of the drugs or the identities of all the coconspirators. Finally, Agent Wohlfert noted that mail-cover requests were not relevant, as no evidence suggested the coconspirators sent mail to each other in furtherance of the conspiracy. In sum, Agent Wohlfert's affidavit contained enough particularized information to conclude that other investigation techniques had been used or considered, and a wiretap was necessary.

---

[3] Delgado focuses on a single event from Agent Wohlfert's affidavit where he believed a codefendant's actions suggested he became aware of a surveillance team. ECF No. 320 at PageID.979. But the affidavit details multiple such occasions.

And, though Delgado only became a subject of the investigation two weeks before the wiretap application, the agents had already employed other investigative methods to discern his identity and role in the conspiracy. For instance, on February 20, 2022, the agents obtained a search warrant for GPS tracking information from Delgado's cell phone, *see* discussion *supra* Section II.B, which helped the agents to identify where Delgado might live, later confirmed by pole-camera footage. But the pole cameras provided very little useful information, Agent Wohlfert averred. And, drawing from prior instances of people in *the same conspiracy* identifying surveillance teams, Agent Wohlfert concluded that physical surveillance would also likely fail with Delgado.

In sum, though law enforcement did not exhaust "all available alternative investigative techniques before applying for a wiretap, it was not required to do so." *United States v. Allen*, No. 3:10-CR-00163, 2011 WL 6016888, at *13 (M.D. Tenn. Dec. 2, 2011). Agent Wohlfert's affidavit establishes that the wiretap was not an initial investigative step, expounds on the impracticability of other available investigative methods, and relates prior experiences to the specific facts of the ongoing investigation. *See United States v. Mosley*, 53 F.4th 947, 953 (6th Cir. 2022). True, the application included some boilerplate language, *see* ECF No. 320 at PageID.978, but it includes ample particularized details to comply with Title III's necessity requirement, *see United States v. Wright*, 635 F. App'x 162, 167 (6th Cir. 2015) (holding that an affidavit's partial reliance "'on statements that would be equally applicable to almost any . . . case [of this kind] does not render the affidavit insufficient' so long as there is 'information about particular facts . . . which would indicate that wiretaps are not being routinely employed as the initial step in criminal investigation'" (quoting *United States v. Landmesser*, 553 F.2d 17, 20 (6th Cir, 1977))).

For those reasons, the Title III application satisfies the necessity requirement of 18 U.S.C. § 2518(1)(c). Consequently, Delgado's Motion will be denied, and no evidence from the wiretaps or the fruits of it will be suppressed.

## V.

Accordingly, it is **ORDERED** that Defendant Ricardo Delgado II's Motion to Suppress Evidence and Request for Franks Hearing, ECF No. 320, is **DENIED**.

**This is not a final order and does not close the above-captioned case.**

Dated: July 14, 2023    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge