UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

      Plaintiff,      Case No. 1:22-cr-20187-1

v.                Honorable Thomas L. Ludington
                United States District Judge

RICARDO DELGADO II,

      Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT RICARDO DELGADO II'S MOTION TO SUPPRESS EVIDENCE AND FOR A *FRANKS* HEARING**

In March 2022, as part of a year-long drug-trafficking conspiracy investigation in March 2022, federal agents obtained two separate warrants to search the alleged residence of Defendant Ricardo Delgado II in Saginaw, Michigan. Now facing five criminal charges, Delgado seeks to suppress evidence seized during the search, arguing the warrant affidavits lacked probable cause and contained false statements that entitle him to a *Franks* hearing.

I.

In early 2022, the FBI identified Defendant Ricardo Delgado II as a suspected drug-trafficking coconspirator and obtained warrants to track his cellular GPS data, install pole cameras outside his house in Saginaw, and wiretap his cell phone. *See United States v. Delgado*, No. 1:22-CR-20187-1, 2023 WL 4542301, at *1 (E.D. Mich. July 14, 2023).

On March 22, 2022, Special Agent Troy Wohlfert[1] authored an affidavit[2] in support of a warrant to search Delgado's alleged residence at 3390 Dixie Court ("Dixie Court House"), in

---

[1] As stated in both affidavits for search warrants, Agent Wohlfert has been a special agent with the FBI since 2010 and assigned to a Mid-Michigan Safe Streets Task Force since 2016.
[2] Although this Court reviewed the March 22 Affidavit in considering Delgado's Motion, the Affidavit is not filed on the public docket, so it is not cited throughout this Opinion and Order.

which Wohlfert outlined events that occurred on February 25, 2023, and March 7–8, 2023. Later that day, officers searched the Dixie Court House and found "14 kilograms of cocaine, narcotics packaging, a money counter, nearly $200,000 in U.S. Currency, approximately 13 firearms, drum-style high-capacity magazines, parts to make firearms operate as machine guns, silencers, and ammunition." ECF No. 395 at PageID.1430.-

On March 23, 2022, Wohlfert authored a second affidavit[3] in support of a second search warrant for the Dixie Court House to locate a cell phone agents believed was in the house. *Id.* Officers found the cell phone when they executed the second warrant later that day. *Id.*

Delgado was indicted for two counts of conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 846, 841(a)(1), possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), possession of a firearm furthering a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A), and unlawful use of a communication facility, 21 U.S.C. § 843(b). ECF No. 176. His trial is scheduled to begin on September 28, 2023. ECF No. 356.

On June 16, 2023, Delgado filed a motion to suppress evidence "obtained from and derivative of the search of 3390 Dixie [Court,]" arguing "this search warrant"[4] lacked probable cause because it was "vague, nebulous, and conclusory in nature." ECF No. 378 at PageID.1336–37. He also requests a *Franks* hearing, arguing that the affidavit includes statements made in reckless disregard for the truth. *Id.* at 1337. The Government opposes both requests. ECF No. 395.

---

[3] Although this Court reviewed the March 23 Affidavit in considering Delgado's Motion, the Affidavit is not filed on the public docket, so it is not cited throughout this Opinion and Order.

[4] There were two search warrants to search the Dixie Court House, and although Defendant refers to only one search warrant throughout his motion, he does not specify *which* search warrant he is challenging. *See generally* ECF No. 378; *see also* ECF No. 395 at PageID.1430–31 (noting one search warrant was obtained on March 22, 2023, and another search warrant was obtained on March 23, 2023). So this Court will address both.

II.

A.

The Fourth Amendment protects people from unreasonable governmental searches and seizures by requiring a warrant based on probable cause, subject to some exceptions. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). This "is not a high bar: It requires only the 'kind of fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States*, 571 U.S. 320, 338, (2014) (quoting *Florida v. Harris*, 568 U.S. 237 (2013)).

In order to establish probable cause, the affidavit must present "facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Crumpton*, 824 F.3d 593, 615 (6th Cir. 2016); *see also United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (requiring a "nexus between the place to be searched and the evidence sought.").

B.

The March 22 Affidavit sought a warrant to search the Dixie Court House for evidence related to drug trafficking and largely relies on Agent Wohlfert's training, experience, and two instances that Agent Wohlfert alleges Delgado travelled to Detroit to obtain drugs from his supplier to establish probable cause.

<u>February 25, 2022</u>. According to Agent Wohlfert, at 3:26 P.M., Delgado received a call from his drug supplier. One hour later, GPS information from Delgado's phone showed he left the Dixie Court House and traveled to a location on Grand Boulevard in Detroit, Michigan ("Grand

Boulevard Location"). Agent Wohlfert avers that investigators had previously observed Delgado travel to the Grand Boulevard Location "in connection with being resupplied" with drugs. While en route to Detroit, Delgado "had" three additional calls with his supplier. GPS data showed that Delgado then left the Grand Boulevard Location "between 6:36 and 6:51 P.M." And at 6:50 P.M., Delgado called codefendant Gregory Hayes and told him "I'll be able to see you tomorrow with, ah, with, with, them, you know."

Agent Wohlfert averred that, based on his training and experience, Delgado was contacted by his supplier, then travelled to the Grand Boulevard Location to be resupplied, obtained a new supply of drugs, and then called Hayes on his way back to Saginaw to inform Hayes that he had a more drugs to give to him the following day.

March 7–8, 2022. According to Agent Wohlfert, on March 7, 2022, the FBI intercepted Delgado's phone calls about collecting money owed for drugs during which it was noted that Delgado would be meeting with his supplier the next day.

The next day—March 8, 2022—Delgado left the Dixie Court House at 4:37 A.M. Eighty-nine minutes later, GPS data from his phone showed he was at the Grand Boulevard Location, where he placed two calls to his supplier—one at 6:17 and another at 6:26 A.M. Delgado then travelled to a gas station "that was approximately one hour away" from the Grand Boulevard location and then travelled "back to another house in the vicinity of [the Grand Boulevard Location]." Just after 2:00 P.M., Delgado arrived back at the Dixie Court House. Agent Wohlfert averred, based on his training and experience, that Delgado travelled to the Grand Boulevard Location to obtain more drugs. Once he arrived, Delgado contacted his supplier and met the supplier at a gas station to exchange money for drugs, then travelled back to Saginaw.

The Affidavit establishes probable cause. It describes Delgado receiving a call from his

supplier, traveling to Detroit, and then almost immediately travelling back to the Dixie Court House in February 2022. It also notes that Delgado called Hayes while travelling back to the Dixie Court House to tell Hayes that he would be able to meet Hayes the following day with "you know." Further, the affidavit outlines Delgado's March 7 calls to collect money for drugs, followed by an early morning trip to the Grand Boulevard Location the next morning, before returning to the Dixie Court House later that day. This reliable evidence of a known drug dealer's travel timelines, cellular GPS data, and intercepted calls could lead a reasonable officer to conclude that evidence of drug trafficking would be found at Delgado's house, especially considering his direct path of travel from the Grand Boulevard Location to the Dixie Court House in conjunction with the intercepted call between Delgado and Hayes on February 25, 2022, and the intercepted calls suggesting Delgado was collecting money before going to the Grand Boulevard Location. *See United States v. Gunter*, 266 F. App'x 415, 419 (6th Cir. 2008) ("[A] nexus exists between a known drug dealer's criminal activity and the [place to be searched] when some reliable evidence exists connecting the criminal activity with the [place to be searched]."); *see also United States v. Glowacki*, No. 22-3279, 2023 WL 179887, at *5 (6th Cir. Jan. 13, 2023) (holding that the proper assessment is not "whether particular conduct is innocent or guilty, but rather the degree of suspicion that attaches to particular types of noncriminal acts"), *cert. denied*, 143 S. Ct. 1042 (2023) (quotations omitted).

In sum, there was probable cause in the affidavit for the March 22, 2022, search warrant to search the Dixie Court House for evidence of drug trafficking.

## C.

The March 23 Affidavit sought a warrant to search the Dixie Court House for Delgado's third cell phone that he used to contact his supplier, and relies on Agent Wohlfert's training,

experience, and the GPS location data from the phone.

According to Agent Wohlfert, two of the three cell phones Delgado used were recovered when he was taken into custody on March 22, 2022. But Wohlfert averred that the investigation showed that Delgado had a third cell phone "used exclusively to talk to his supplier," and previously authorized GPS data showed the third phone was at the Dixie Court House. Thus, there is probable cause that the cell phone—used exclusively to obtain drugs—was located at the Dixie Court House. *See United States v. Church*, 823 F.3d 351, 355 (6th Cir. 2016) ("[T]o establish probable cause for a search, an affidavit must show a likelihood of two things: first, that the items sought are "seizable by virtue of being connected with criminal activity"; and second, "that the items will be found in the place to be searched." (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978))).

In sum, there was probable cause in the affidavit for the March 23, 2022, search warrant to search the Dixie Court House for Delgado's third cell phone.

### III.

Having determined there was probable cause for both searches of the Dixie Court House, this Court will turn to Delgado's request for a *Franks* hearing.

### A.

"[T]he obvious assumption" made regarding the probable-cause requirement "is that there will be a truthful showing." *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) (quoting *United States v, Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)). A statement in an affidavit is deemed truthful if it is "believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165.

In order to obtain a *Franks* hearing, Defendant must (1) "make a substantial showing that the affiant knowingly and intentionally, or with reckless disregard for the truth,

included a false statement or material omission in the affidavit"; and (2) "prove that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). If the defendant satisfies both requirements, then the falsity or omission is set aside for the court to reevaluate whether the remaining content in the affidavit is "sufficient . . . to support a finding of probable cause." *Franks*, 438 U.S. at 171–72. If it is not, then the defendant is entitled to a *Franks* hearing under the Fourth Amendment. *Id.* at 172.

## B.

Delgado alleges Agent Wohlfert's affidavits "reference[] a number of purported occasions during which [Delgado] allegedly met with his supplier,"[5] but that these "purported occasions" are "without merit, unsubstantiated, and undeniably made in reckless disregard for the truth." ECF No. 378 at PageID.1342. But apart from two conclusory sentences, Defendant does not explain how Wohlfert's statements—based on cellular GPS data and intercepted calls—are "without merit." *See* ECF No. 378 at PageID.1342. Nor does he provide any evidence that Agent Wohlfert's statements regarding Delgado's meetings with his supplier were false or that he intended his statements to be false or misleading. *See id.* And without evidence that Agent Wohlfert *intended* the statements to be false or misleading, Delgado cannot satisfy the first requirement for a *Franks* hearing. *See United States v. Allen*, No. 21-4029, 2023 WL 34235, at *3 (6th Cir. Jan. 4, 2023) (affirming district court's denial of *Franks* hearing because defendant provided no evidence that affiant had intent to lie or knowledge that he was lying); *United States v. Harris*, No. 1:21-CR-00074-6, 2023 WL 3475406, at *4 (S.D. Ohio May 15, 2023) ("[M]erely proving a falsity or omission is not enough—the defendant must show the affiant *intended* it to be false or misleading."

---

[5] Notably, only the March 22 Affidavit outlines Delgado's alleged meetings with his supplier.

- 8 -

(citing *United States v. Merrell*, 330 F. App'x 556, 560 (6th Cir. 2009))).

For these reasons, Delgado's request for a *Franks* hearing will be denied.

**IV.**

Accordingly, it is **ORDERED** that Defendant Ricardo Delgado II's Motion to Suppress Evidence and Request for a Hearing, ECF No. 378, is **DENIED**.

**This is not a final order and does not close the above-captioned case**.

Dated: August 25, 2023                                          s/Thomas L. Ludington
                                                                THOMAS L. LUDINGTON
                                                                United States District Judge