UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

                Plaintiff,                        Case No. 1:22-cr-20187-1

v.                                       Honorable Thomas L. Ludington
                                       United States District Judge

RICARDO DELGADO II,

                Defendant.

_____/

**OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR EARLY DISCOVERY UNDER THE JENCKS ACT; (2) GRANTING DEFENDANT'S MOTION FOR PRODUCTION OF GRAND JURY TRANSCRIPTS; (3) DENYING DEFENDANT'S MOTION TO SUPPRESS POLE-CAMERA FOOTAGE AS A CONSTRUCTIVE BRADY VIOLATION; (4) DENYING DEFENDANT'S MOTION FOR A FRANKS HEARING; (5) DENYING DEFENDANT'S MOTION TO SUPPRESS ALL EVIDENCE FROM POLE CAMERAS; AND (6) DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION IN LIMINE**

      In February 2021, the FBI began investigating a suspected drug-trafficking operation in Saginaw, Michigan. In addition to traditional investigative methods, agents installed pole cameras near some suspects' houses and received authorization to wiretap suspects' phones. The investigation led the Government to bring charges against 15 suspected traffickers, including Defendant Ricardo Delgado II, who was arrested in March 2022 and charged with three drug counts, five gun counts, and one count of using a communication facility in furtherance of a felony. All 14 of Delgado's codefendants have pleaded guilty, and have either been sentenced or are awaiting sentencing.

      After years of stipulated adjournments, Defendant's trial is scheduled to begin on June 20, 2024. Five weeks before trial, Defendant filed six pretrial motions. Each motion will be addressed in turn.

**I.**

**A.**

Over three years ago, the FBI began investigating Codefendant Jarquaze Townsend for suspected distribution of cocaine in Saginaw, Michigan. ECF No. 353 at PageID.1154. The ensuing investigation involved controlled purchases of cocaine by confidential informants, surveillance by agents, and cellular toll record analysis.[1] *Id.* In December 2021, after receiving court authorization, the FBI intercepted wire and electronic communications on phones used by codefendants Townsend, Dominic Riley, and Gregory Hayes. *Id.* These intercepted communications revealed Hayes supplied controlled substances to Townsend and included "numerous calls . . . regarding the sale and distribution of controlled substances to and from" a phone number used by an unknown male ("Unknown Male"). *Id.*; *see also United States v. Delgado*, 682 F. Supp. 3d 661, 665–66 (E.D. Mich. 2023) (detailing some of the intercepted calls).

Accordingly, the FBI sought warrants to search Unknown Male's cell phones on February 20 and 28, 2022. ECF No. 353 at PageID.1155. Then, on March 2, 2022, the FBI applied for court authorization to wiretap various devices, including one of Unknown Male's cell phones. *Id.* The warrants and wiretaps were granted. *Id.* Around this time, FBI agents also installed a camera on a pole outside what they believed to be Unknown Male's house on Dixie Court to surveil the Unknown Male. *See United States v. Delgado*, 682 F. Supp. 3d 661, 670 (E.D. Mich. 2023).

Throughout the next few weeks, FBI agents listened to Defendant's phone conversations with his coconspirators. On March 22, 2024, agents intercepted a call between Defendant and Codefendant Jonathan Coronado. ECF No. 654 at PageID.3758. Coronado told Defendant that he

---

[1] Cellular providers are required to maintain "toll records" for 18 months, which show "the name, address, and telephone number of the caller, telephone number called, date, time, and length of the call." 47 C.F.R. § 42.6.

had just been robbed while attempting to sell cocaine, and Defendant responded by directing

Coronado to go "shoot up" the house he was robbed at. *Id.* Then, after hanging up with Coronado,

Defendant called Codefendant Gregory Hayes to explain the situation and ask if Hayes knew who

the robbers were. *Id.* According to the Government, Defendant also told Hayes that he told

Coronado to "shoot up" the house and "either retrieve what was taken or Coronado was to give

Delgado one of the individuals who had robbed him." *Id.*

After hearing these calls, FBI notified local law enforcement officers, who arrested

Defendant, Coronado, and Hayes the same day, before the shooting could occur. *Id.* at

PageID.3759. After obtaining a warrant, officers searched Defendant's Dixie Court house and

located "14 kilograms of cocaine, narcotics packaging, a money counter, nearly $200,000 in U.S.

Currency, approximately 13 firearms, drum-style high-capacity magazines, parts to make firearms

operate as machine guns, silencers, and ammunition." *United States v. Delgado*, No. 1:22-CR-

20187-1, 2023 WL 5500833, at *1 (E.D. Mich. Aug. 25, 2023) (citing ECF No. 395 at

PageID.1430).

Defendant was indicted for conspiracy to possess with intent to distribute cocaine, 21

U.S.C. §§ 846 and 841(a)(1), possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1),

possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), and

use of a communication facility in causing a felony, 21 U.S.C. § 843(b). ECF No. 47.

**B.**

Two superseding indictments added codefendants over the next six months. *See* ECF Nos.

67; 176. After the Second Superseding Indictment, there were 15 codefendants indicted and

identified as part of the alleged drug distribution conspiracy. *See* ECF No. 176. The motion cutoff

date was June 16, 2023, ECF No. 356 at PageID.1182, and several defendants—including

Delgado—filed pretrial motions that were timely addressed by this Court. *See* ECF Nos. 314; 315; 320; 322; 323; 377; 378; 379.

The schedule was adjourned to permit all defendants adequate time to engage in plea negotiations, *see* ECF No. 443, and by November 2023, all but Defendant had pleaded guilty. *See* ECF No. 532. At that point, the Parties agreed to further adjourn the schedule to allow the United States Probation Office to prepare a pre-plea presentence investigation report (PSR). *Id.* The pre-plea PSR was completed and one week before the final pretrial conference, but Defense Counsel filed a motion seeking to adjourn the trial because he was having difficulty scheduling visits with Defendant at his pretrial detention facility. ECF No. 598. Counsel for both Defendant and the Government attended a status conference on March 5, 2024, agreed to a 41-day adjournment, and noted that plea negotiations were underway. ECF No. 605. Yet, on April 15, 2024, Defense Counsel filed another motion to adjourn the final pretrial conference and jury trial to early July 2024 because he needed additional time to prepare for trial, in light of two deaths in his immediate family. ECF No. 627 at PageID.3552–53. Defense Counsel's Motion was granted in part, and a firm jury trial date of June 20, 2024 was scheduled. ECF No. 631.

On May 15, 2024, the Government filed a Third Superseding Indictment after the Parties were apparently unable to reach a plea agreement. ECF No. 647. The Third Superseding Indictment contains the same charges against Defendant as alleged in the Second Superseding Indictment, *see* ECF No. 176, but adds (1) one count of possession with intent to distribute fentanyl, 21 U.S.C. § 841(a)(1); (2) one count of possession of a machinegun in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A) and (c)(1)(B)(ii); (3) one count of possession of a machinegun, 18 U.S.C. § 922(o)(1); (4) one count of felon in possession of a firearm, 18 U.S.C. § 922(g)(1); and (5) one count of possession of an unregistered silencer, 26 U.S.C. § 5861(d). ECF

No. 647. It also adds sentencing enhancements under 21 U.S.C. §§ 841(b)(1)(A)(ii)(II) to the two

of the existing cocaine-distribution counts and the newly added fentanyl-distribution count. *Id.* at

PageID.3703–06.

On the same day the Government filed its Third Superseding Indictment, Defendant filed

six pretrial motions. ECF Nos. 641; 642; 643; 644; 645; 646. Because the motions were filed five

weeks before trial, the Government was directed to file an expedited response. ECF No. 648.

Broadly, three of Defendant's motions attack the pole-camera footage, ECF Nos. 641; 643; 645,

two seek production of discovery from the Government, ECF Nos. 642; 644, and one seeks

exclusion of two categories of evidence at trial, ECF No. 646. The Government opposes the relief

requested in four of Defendant's six motions. *See* ECF Nos. 649; 651; 653; 654; *but see* ECF Nos.

650; 652 (concurring in relief requested by Defendant). On May 22, 2024, as this Opinion and

Order was being finalized, Defense Counsel emailed this Court and requested seven days to file

replies to the Government's responses. But such a timeframe is beyond the deadline for pretrial

submissions and the final pretrial conference, *see* ECF No. 631, and these issues require attention

in advance of that date, so Defense Counsel's request will be denied, and each Motion will be

addressed in turn.

**II.**

**A. Defendant's Motion to Suppress Pole-Camera Footage as Constructive *Brady* Violation**

Defendant firsts seeks to suppress all pole-camera footage as a constructive *Brady*

violation. ECF No. 641. Alternatively, he seeks an order compelling the Government to produce

all pole-camera footage "in a usable format." *Id.* The Government responds that it does not intend

to use any pole-camera footage at trial, ECF No. 649 at PageID.3717, and argues there is no *Brady*

violation because the pole-camera footage is not material. *Id.* at PageID.3717–21. And even if it

was, the Government argues in that alternative that it has complied with its obligations under both *Brady* and Criminal Rule 16 by providing the video files to Defense Counsel several times over the past two years. *Id.* at PageID.3722–26.

**1.**

Under *Brady v. Maryland*, the Government has a duty to disclose "evidence favorable to an accused" that is "material either to guilt or punishment." *Brady v. Maryland*, 373 U.S. 83, 87 (1963). Information is not "material" under *Brady* unless it "consists of, or would lead directly to, evidence admissible at trial for either substantive or impeachment purposes." *United States v. Phillip*, 948 F.2d 241, 249 (6th Cir. 1991).

"The typical *Brady* issue is retrospective, that is, the court examines the materiality of the non-disclosed evidence in the context of a completed criminal trial which has resulted in a verdict of guilty, to assess the probable effect of the evidence on the verdict." *United States v. Hayes*, 376 F. Supp. 2d 736, 739 (E.D. Mich. 2005). But, pretrial, "the government typically is the sole judge of what evidence in its possession is subject to disclosure" under *Brady*. *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988).

"The Sixth Circuit has emphasized that the decisions in *Brady* and its progeny do not confer a right to discovery, but instead are meant to safeguard a defendant's due process right to a fair trial." *United States v. Ekiyor*, 89 F. Supp. 3d 928, 932 (E.D. Mich. 2015) (citing *United States v. Mullins*, 22 F.3d 1365, 1371 (6th Cir. 1994)). Indeed, a defendant seeking pretrial disclosure of information under *Brady* and its progeny must show *how* the information is material, including how it might be admissible at trial or lead to the discovery of admissible evidence for substantive or impeachment purposes. *United States v. Ekiyor*, 89 F. Supp. 3d 928, 932 (E.D. Mich. 2015).

**2.**

Defendant argues "his inability to access the pole camera video in the current format is a constructive denial of his access to the materials." ECF No. 641 at PageID.3639. But—importantly—Defendant has not shown how the pole-camera footage he seeks is *material* to his defense such that he is *entitled* to access it under *Brady*. *See United States v. Ekiyor*, 89 F. Supp. 3d 928, 932 (E.D. Mich. 2015) (reasoning that a defendant seeking pretrial disclosure under *Brady* and its progeny must show how the information is material, including how it might be admissible at trial or lead to the discovery of admissible evidence). To the contrary, the Government argues the pole-camera footage is *not* material. *See* ECF No. 649 at PageID.3719–20 ("The pole camera videos cannot be deemed a legitimate shield to the charges alleged in the indictment . . . [t]he issue at trial will be whether Delgado's intercepted conversations and the evidence the search warrant produced establish beyond a reasonable doubt the crimes alleged in the indictment."). And, pretrial, "the government typically is the sole judge of what evidence in its possession is subject to disclosure" under *Brady*. *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988). Indeed, absent any explanation from Defendant, it is not clear how the pole-camera video might lead to the discovery of admissible evidence for substantive or impeachment purposes. Accordingly, it does not appear to this Court that Defendant's lack of access to the pole-camera video is a constructive *Brady* violation, thus footage from the pole cameras will not be suppressed. And, even if the footage was material, the Government has already provided the video to Defense Counsel. True, Defense Counsel does not currently own a computer capable of playing the video files. *See* ECF Nos. 641 at PageID.3634; 649 at PageID.3724. But suppression is not the proper remedy for such a situation, especially where, as here, the Government has, among other efforts to provide Defense Counsel with the pole-camera footage, facilitated opportunities for Defense Counsel to

view the requested pole camera footage at Government offices. *See id.* at PageID.3725. Accordingly, Defendant's first Motion will be denied.

**B. Defendant's Motion to Suppress Pole-Camera Footage as Fourth Amendment Violation**

Next, Defendant seeks to suppress "all evidence from the pole cameras" because they were installed outside the Dixie Court house without a warrant. ECF No. 645 at PageID.3688 (emphasis omitted). Alternatively, Defendant seeks to limit pole-camera evidence to "only images readily observed from a public street." *Id.* The Government opposes Defendant's Motion, arguing that the pole camera was not a search because it only captured "areas of the curtilage that would be observable to the public who passed by the residence." ECF No. 653 at PageID.3747.

**1.**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV.

There are two ways government action may constitute a search. *United States v. May-Shaw*, 955 F.3d 563, 567 (6th Cir. 2020). First, a search "undoubtedly occur[s]" when the government physically intrudes into a constitutionally protected area—namely, persons, houses, papers, and effects—to obtain information. *Florida v. Jardines*, 569 U.S. 1, 5 (2013). "Second, as articulated by the Supreme Court, a search occurs when 'a government official invades an area in which a person has a constitutionally protected reasonable expectation of privacy.'" *United States v. May-Shaw*, 955 F.3d 563, 567 (6th Cir. 2020) (*citing Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019)). Under the second framework, a government intrusion is only a Fourth Amendment search if (1) the person exhibits "an actual (subjective) expectation of privacy" in the place or thing to be searched; and (2) the expectation is one "that society is prepared to recognize as reasonable." *Katz v. United States*, 389 U.S. 347, 361 (1967) (Harlan, J., concurring).

**2.**

Importantly, in the Sixth Circuit, long-term warrantless surveillance "does not violate the Fourth Amendment." *United States v. May-Shaw*, 955 F.3d 563, 567 (6th Cir. 2020); *see also United States v. Houston*, 813 F.3d 282, 288 (6th Cir. 2016) (holding that a video camera attached to a utility pole, used to record a defendant's front porch over a ten-week period, did not violate the Fourth-Amendment because "agents only observed what [the defendant] made public to any person traveling on the roads" surrounding his home). And there is nothing here to suggest that the pole cameras installed at Defendant's Dixie Court house recorded anything beyond the front yard and driveway, both of which were visible to anyone else who might have been "traveling" down Dixie Court. *Id.*; *see also* ECF No.653-1 at PageID.3752 (showing the view of the pole-camera at issue here).

In sum, the Dixie Court pole camera which was installed outside Defendant's house without a search warrant did not violate the Fourth Amendment, so Defendant's Motion to Suppress all images from the pole camera will be denied.

**C. Defendant's Motion for a *Franks* Hearing**

Defendant next alleges that the March 2, 2022 affidavit Agent Wohlfert prepared in support of his application for authorization to wiretap Unknown Male's cell phone contained a "false statement that was material to a finding of probable cause." ECF No. 643 at PageID.3667 (emphasis omitted). Accordingly, he seeks a *Franks* hearing to evaluate the truthfulness of Wohlfert's affidavit. ECF No. 643. The Government opposes Defendant's Motion, arguing there is no evidence Agent Wohflert's statement was false and even if there was, the remaining parts of the affidavit still establish probable cause. ECF No. 651.

**1.**

"[T]he obvious assumption" made regarding the probable-cause requirement "is that there will be a truthful showing." *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) (quoting *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)). A statement in an affidavit is deemed truthful if it is "believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165.

In order to obtain a *Franks* hearing, Defendant must (1) "make a substantial showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit"; and (2) "prove that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). If the defendant satisfies both requirements, then the falsity or omission is set aside for the court to reevaluate whether the remaining content in the affidavit is "sufficient . . . to support a finding of probable cause." *Franks*, 438 U.S. at 171–72. If it is not, then the defendant is entitled to a *Franks* hearing under the Fourth Amendment. *Id.* at 172.

**2.**

Defendant alleges that the following statement in Agent Wohlfert's March 2, 2022 affidavit in his application for wiretap authorization is false:

> [The Dixie Court pole] camera allowed investigators to establish this as [the Unknown Male's] primary residence, but has not yet provided a clear image of the Unknown Male to fully establish identity.

ECF No. 643 at PageID.3677. Defendant asserts this statement is false because no other search-warrant affidavit in the investigation referenced difficulty obtaining a clear image and because the Dixie Court pole camera "experienced no distortion or suggestion of any visual hinderance immediately prior to the March 2, 2022 wiretap request." *Id.* at PageID.3678.

- 10 -

Importantly, as detailed above, the pole cameras here were placed on a telephone pole outside of the Dixie Court house, and provided a view of only the curtilage of the Dixie Court house. *See supra* Sec. B.2. Defendant has not provided any evidence that Wohlfert *actually knew* Defendant's identity from the pole-camera footage, let alone that Wohlfert *intended* his statements regarding what he could discern from the pole-camera footage to be false or misleading. And without evidence that Agent Wohlfert *intended* the statements to be false or misleading, Defendant cannot satisfy the first requirement for a *Franks* hearing. *See United States v. Allen*, No. 21-4029, 2023 WL 34235, at *3 (6th Cir. Jan. 4, 2023) (affirming the denial of a *Franks* hearing when defendant provided no evidence that affiant intended to lie nor knew he was lying); *United States v. Harris*, No. 1:21-CR-00074-6, 2023 WL 3475406, at *4 (S.D. Ohio May 15, 2023) ("[M]erely proving a falsity or omission is not enough—the defendant must show the affiant *intended* it to be false or misleading." (citing *United States v. Merrell*, 330 F. App'x 556, 560 (6th Cir. 2009))).

### D. Defendant's Motion *in Limine*

Defendant next filed a Motion *in Limine*, seeking to exclude two categories of evidence Defendant argues are substantially more unfairly prejudicial than probative. ECF No. 646. First, he seeks to exclude any reference to his alleged ties to a "Mexican drug cartel." *Id.* at PageID.3701. Second, he seeks to exclude any reference to or evidence of the alleged shooting he ordered on March 22, 2022. *Id.* The Government does not oppose Defendant's first request and does not intend to make any such references or offer any such evidence at trial. ECF No. 654 at PageID.3754. But the Government opposes Defendant's second request, arguing such evidence has significant probative value concerning Defendant's involvement in the alleged conspiracy to distribute drugs. *Id.* at PageID.654–62.

**1.**

A motion *in limine* is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40, n.2 (1984). A motion *in limine* "narrow[s] the issues remaining for trial and . . . minimize[s] disruptions at trial." *United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999). In disposing a motion *in limine*, the guiding principle is to "ensure evenhanded and expeditious management of trials." *Ind. Ins. Co. v. GE*, 326 F. Supp. 2d 844, 846 (N.D. Ohio, 2004).

Motions *in limine* should be granted only when the challenged evidence is determined to be clearly inadmissible on *all* potential grounds. *Id.* When a court is unable to determine whether certain evidence is clearly inadmissible, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice can be resolved in the proper context. *Id.* A court's ruling on a pretrial motion *in limine* may be changed "at any point prior to or during the trial, as 'facts may . . . come to the district court's attention which it did not anticipate at the time of its initial ruling.'" *United States v. Householder*, No. 1:20-CR-77, 2022 WL 17600159, at *1 (S.D. Ohio Dec. 13, 2022) (quoting *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994)). Whether to grant a motion *in limine* falls within the sound discretion of the trial court. *Branham v. Thomas Cooley Law School*, 689 F.3d 558, 560 (6th Cir. 2012).

**2.**

The Government states that it intends to admit into evidence the recordings of two calls involving Defendant on March 22, 2022 that led to Defendant's arrest. ECF No. 654 at PageID.3758. According to the Government, the first recording it intends to introduce is a call between Defendant and Coronado, during which Coronado told Defendant that he had just been robbed while attempting to sell cocaine. *Id.* Defendant responded by directing Coronado to shoot

- 12 -

up the house where he was robbed and made plans to meet up with Coronado afterwards. *Id.*

According to the Government, after hanging up with Coronado, Defendant called Hayes, a

recording the Government intends to admit into evidence at trial, as well. *Id.* During the call,

Defendant explained the unfolding situation to Hayes and noted that he had told Coronado to return

to the house, shoot the place up, and "either retrieve what was taken or Coronado was to give

[Defendant] one of the individuals who had robbed him." *Id.* Notably, the Government reports that

both Coronado and Hayes will testify at trial. *See* ECF No. 650 at PageID.3730 (noting that the

Government expects to call Gregory Hayes and Jonathan Coronado to testify at trial). Defendant

seeks to exclude any evidence of or reference to both these calls, arguing they are "irrelevant and

prejudicial" because the shooting never occurred, the substance of the calls is "complete

inflammatory," and the information is "impermissible character evidence." ECF No. 646 at

PageID.3701.

District courts enjoy "broad discretion" in determining whether evidence is substantially

more prejudicial than probative. *United States v.* Wilder, 87 F.4ᵗʰ 816, 819–20 (6th Cir. 2023).

Rule 401 defines "relevant evidence" as evidence that "has any tendency to make a fact more or

less probable than it would be without the evidence," assuming that "the fact is of consequence in

determining the action." FED. R. EVID. 401. Rule 403, however, provides that even relevant

evidence may be excluded if its probative value is substantially outweighed by a danger of, among

other things, unfair prejudice. FED. R. EVID. 403. The Sixth Circuit defines unfair prejudice as the

"undue tendency to suggest a decision based on improper considerations[.]" *United States v.*

*Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999).

Both calls, as detailed by the Government, are relevant and probative. The conversations

Defendant had with Coronado and Hayes about someone robbing Coronado and how to respond

to the robbery directly relates to the allegations that Defendant conspired with codefendants—in this case, Coronado and Hayes—in his drug-trafficking enterprise. Not only are these calls *between* coconspirators, these are calls *about* the loss of drugs the coconspirators *conspired to sell*.

This significant probative value is not *substantially outweighed* by a danger of unfair prejudice or any other Rule 403 concern. *See* FED. R. EVID. 403. True, as Defendant emphasizes, the shooting never occurred. *See* ECF No. 646 at PageID.3701.  But, according to the Government, the shooting never occurred *because* FBI agents were listening to the calls and alerted law enforcement to stop Defendant and Coronado before anyone drove to the house where the shooting was allegedly going to occur. ECF No. 654 at PageID.3758. And true, as Defendant points out, *see* ECF No. 646 at PageID.3701, if the Government was offering evidence of both calls to prove Defendant's character, it might be inadmissible, other-acts evidence. *See* FED. R. EVID. 404(b)(1). But, "other-acts evidence *can* be admitted for different purposes—such as to prove a defendant's 'motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.'" *United States v. Lester*, 98 F.4th 768, 776 (6th Cir. 2024) (quoting FED. R. EVID. 404(b)(2)). And here the evidence relating to both calls appears to be offered to prove Defendant's intent, preparation, plan, and knowledge. FED. R. EVID. 404(b)(2). But to minimize any potential impressible consideration by the jury, the Parties will be invited to submit a limiting instruction which instructs the jury how to consider the evidence.

In sum, at this juncture, evidence of the calls Defendant made to Coronado and Hayes are not clearly inadmissible on all grounds. So Defendant's Motion *in Limine*, ECF No. 646, will be denied without prejudice.

**E. Defendant's Motions Seeking Jencks Act Materials and Grand-Jury Transcripts**

Finally, Defendant seeks orders compelling the Government to produce early discovery

under the Jencks Act, ECF No. 642, and transcripts of Agent Wohlfert's grand-jury testimony, ECF No. 644. The Government responded that it would provide Jencks Act materials to Defendant no later than 14 days before the start of trial, ECF No. 650 at PageID.3730, and that it would provide Defendant with transcripts of Agent Wohlfert's May 2024 grand-jury testimony within five days of receiving the completed transcripts from the court reporter, ECF No. 652 at PageID.3743. Accordingly, both motions will be granted and the Government will be directed to provide the materials to Defendant.

### III.

Accordingly, it is **ORDERED** that Defendant Ricardo Delgado II's Motion for Early Discovery Under the Jencks Act, ECF No. 642, is **GRANTED**.

Further, it is **ORDERED** that the Government is **DIRECTED** to provide Jencks Act material to Defendant **on or before June 6, 2024.**

Further, it is **ORDERED** that Defendant Ricardo Delgado II's Motion for Production of all Grand Jury Transcripts of Agent Wohlfert's Testimony, ECF No. 644, is **GRANTED**.

Further, it is **ORDERED** that the Government is **DIRECTED** to provide transcripts of Agent Wohlfert's grand jury testimony to Defendant **no later than five days after it receives transcripts from the court reporter.**

Further, it is **ORDERED** that Defendant's Motion to Suppress Pole-Camera Footage as a Constructive Brady Violation, ECF No. 641, is **DENIED**.

Further, it is **ORDERED** that Defendant's Motion for a Franks Hearing, ECF No. 643, is **DENIED**.

Further, it is **ORDERED** that Defendant's Motion to Suppress All Evidence from Pole Cameras, ECF No. 645, is **DENIED**.

Case 1:22-cr-20187-TLL-PTM   ECF No. 657, PageID.3783   Filed 05/23/24   Page 16 of 16

Further, it is **ORDERED** that Defendant's Motion in *Limine*, ECF No. 646, is **DENIED**

**WITHOUT PREJUDICE**.

**This is not a final order and does not close the above-captioned case**.


Dated: May 23, 2024                              s/Thomas L. Ludington
                                                 THOMAS L. LUDINGTON
                                                 United States District Judge