UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                             Case No. 1:22-cr-20187-1

v.                                             Honorable Thomas L. Ludington
                                                   United States District Judge

RICARDO DELGADO II,

        Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS AND DEMAND FOR A *FRANKS* HEARING**

In February 2021, the FBI began investigating a suspected drug-trafficking operation in Saginaw, Michigan. In addition to traditional investigative methods, agents installed pole cameras near suspects' houses and received authorization to wiretap suspects' phones. The investigation led the Government to bring charges against 15 suspected traffickers, including Defendant Ricardo Delgado II, who was arrested in March 2022 and charged with three drug counts, five firearm counts, and one count of using a communication facility in furtherance of a felony.

After years of stipulated adjournments, Defendant's trial is scheduled to begin on June 20, 2024. Just over two weeks before trial, Defendant filed a motion to suppress, arguing that FBI Agent Troy Wohlfert made material omissions in his affidavits in support of search warrants and wiretaps by identifying Defendant as "Unknown Male" and omitting Defendant's identity—which Defendant asserts Agent Wohlfert actually knew. But Defendant has not shown that Agent Wohlfert knew or should have known Defendant's identity and intentionally omitted it from his affidavits, nor that the unknown nature of Defendant's identity was necessary to the findings of probable cause in each search warrant or wiretap. So, Defendant's Motion will be denied.

I.

A.

Over three years ago, the FBI began investigating Codefendant Jarquaze Townsend for suspected distribution of cocaine in Saginaw, Michigan. ECF No. 353 at PageID.1154. The ensuing investigation involved controlled purchases of cocaine by confidential informants, surveillance by agents, and cellular toll record analysis.[1] *Id.* In December 2021, after receiving court authorization, the FBI intercepted wire and electronic communications on the cell phones used by Codefendants Townsend, Dominic Riley, and Gregory Hayes. *Id.* These intercepted communications revealed Hayes supplied controlled substances to Townsend and included "numerous calls . . . regarding the sale and distribution of controlled substances to and from" a phone number used by an unknown male ("Unknown Male"). *Id.*

Accordingly, the FBI sought warrants to monitor Unknown Male's location and cell tower data on February 20 and 28, 2022. *Id.* at PageID.1155. Then, on March 2, 2022, the FBI applied for court authorization to wiretap various devices, including one of Unknown Male's cell phones. *Id.* Supporting affidavits for all three requests were authored by FBI Agent Troy Wohlfert and are summarized below.[2]

### i. February 20, 2022 Search-Warrant Affidavit

The February 20 Affidavit sought a search warrant for GPS data from Unknown Male's cell phone to identify him and his role in the conspiracy. It details two intercepted phone conversations between Hayes and Unknown Male to establish probable cause.

On February 18, 2022, the FBI intercepted a call in which Unknown Male told Hayes, "I

---

[1] Cellular providers are required to maintain "toll records" for 18 months, which show "the name, address, and telephone number of the caller, telephone number called, date, time, and length of the call." 47 C.F.R.§ 42.6.

[2] Agent Wohlfert's affidavits are not filed on the public docket but are on file with the Court.

might just have to call dude," Hayes responded affirmatively, but then Unknown Male said he would "wait until [he] hear[d] from him last minute." Agent Wohlfert avers that based on his training and experience as a special agent with the FBI, Hayes and Unknown Male were discussing an anticipated shipment of cocaine during the phone call and that Unknown Male concluded he was not going to contact the supplier and was going to wait until he heard from the supplier.

Later in the same call, Hayes said "Yeah, ahh, shit even if you got somebody else looking, I, I, still, I still got some laying around you know what I mean[,] but I'm, I could get a call any minute you know what I mean." The Unknown Male responded, "Yeah, me too, that's how I am. That's why I'm like, I'm in a hurry but I'm not at the same time you know what I mean." In this exchange, Agent Wohlfert avers, Unknown Male and Hayes were discussing the possibility that they could run out of cocaine, and Hayes told Unknown Male that he still had some left if Unknown Male ran out and needed more.

The call ended after Unknown Male said to Hayes, "But I'm just waiting if, if dude calls I'll let you know. That's when you'll see me call again, but if not I'll just, ah, I'll just wait to hear from you." Agent Wohlfert avers that in this statement, Unknown Male saying he would contact Hayes when he heard from their supplier.

Two days after this first call, the FBI intercepted another between Unknown Male and Hayes, in which Unknown Male said, "You know how the weather has been fucked up and shit?" Hayes responded affirmatively, and then Unknown Male explained that "they got delayed two days he told me so he said Monday or Tuesday, so I mean I know we got tomorrow to put something together that'd be good I be like good man I need them extra days." Hayes responded that he could "almost get that right now . . . but hopefully [would] get a call today or tomorrow early." Agent Wohlfert avers that, in this portion of the February 20 conversation, (1) Unknown

Male was telling Hayes that their supply of cocaine was delayed; (2) Unknown Male was happy because the delay gave him more time to collect the money to purchase the cocaine; and (3) Hayes responded that he had most of the money ready for purchase.

Later in the call, Unknown Male said that "somebody" told him that "some dudes on the north side said they went out of town and scored some at, ah, 25," Hayes responded that he heard the same information, and they discussed whether it was true. Then Unknown Male said, "[I]f we keep dropping them numbers it's starting to squeeze a lot of them out because a couple of them I heard ain't even making trips no more because they said it ain't even worth it no more." Based on his training, experience, and previously intercepted calls, Agent Wohlfert avers that Unknown Male and Hayes were discussing lowering the prices of their cocaine based on rumors that members of the Northside Gang went to Texas to purchase cocaine for $25,000.

Having outlined both the February 18 and February 20, 2022 phone calls between Unknown Male and Hayes, Agent Wohlfert's February 20 Affidavit concludes that Unknown Male was using his cell phone to distribute controlled substances, and accordingly requested a warrant to obtain Unknown Male's GPS tracking information to help identify him and his specific role within the suspected drug conspiracy.

### ii. February 28, 2022 Search-Warrant Affidavit

The February 28 Affidavit sought a search warrant for cell-tower data related to 3390 Dixie Court in Saginaw, Michigan, to assist the FBI in identifying any additional cell phones they believed Unknown Male used to traffic drugs. In this Affidavit, Agent Wohlfert supported his probable cause conclusion on his training and experience, the February 18 and 20 phone calls discussed above, *see* discussion *supra* Section I.A.i., and two additional phone calls on February 19 and February 24, 2022.

On February 19, 2022, Hayes contacted a potential customer to sell him 10 kilograms of cocaine. Hayes told the potential customer that his supplier "connected so cold when he talks to his people they talk, not Mexican, they talk some other shit." Agent Wohlfert avers that Hayes was telling the potential customer that his supplier is well-connected and does not get his cocaine from Mexico, but from a country "further into Central or South America."

On February 24, 2022, at 5:54 PM, Unknown Male called Hayes but started speaking Spanish to someone else "in the background," so only one side of the conversation could be heard. Three minutes later, Unknown Male called Hayes again, explaining that "they" had called him immediately after he had called Hayes three minutes earlier, and Hayes responds that he "heard that language" Unknown Male was speaking and decided to hang up. Agent Wohlfert avers that, in this call, Unknown Male was "apologizing to Hayes because he had called Hayes but their supplier had [called] on another phone at the same time," suggesting Unknown Male was using a second, unknown cell phone for cocaine distribution.

### iii. March 2, 2022 Affidavit in Support of Wiretap Application

Agent Wohlfert's March 2 Affidavit sought authorization to wiretap Unknown Male's cell phone to discover not only Unknown Male's identity, but also the full scope of the drug-trafficking conspiracy and the identity of the drug suppliers.

The affidavit includes the February 18, 2022 and February 20, 2022 phone calls, *see supra* Section I.A.i., and noted that Unknown Male's phone number was involved in 148 calls to or from other Target Subjects under investigation related to the conspiracy. Agent Wohlfert also "detail[ed] all investigative techniques that were used or considered in the year-long investigation leading up to the wiretap of [Unknown Male's] phone" to show the necessity of the wiretap. *United States v. Delgado*, 682 F. Supp. 3d 661, 669 (E.D. Mich. 2023). To that end, Agent Wohlfert outlined the

February 20 and February 28 search warrants that had been utilized to obtain Unknown Male's cellular GPS data and cell-tower information related to the Dixie Court House and detailed the use of confidential informants and pole cameras, as well as their shortcomings. *See id.*

**B.**

The search warrants and wiretaps outlined above were all granted. *Id.* Around this time, FBI agents also installed a surveillance camera on a pole outside the Dixie Court House, which they believed to be related to Unknown Male and the conspiracy. *See United States v. Delgado*, 682 F. Supp. 3d 661, 670 (E.D. Mich. 2023).

Throughout the next few weeks, FBI agents listened to Unknown Male's phone conversations with his coconspirators and identified him as Defendant Ricardo Delgado II. *See United States v. Delgado*, 682 F. Supp. 3d 661, 665–66 (E.D. Mich. 2023). On March 22, 2024, agents intercepted a call between Defendant and Codefendant Jonathan Coronado. ECF No. 654 at PageID.3758. Coronado told Defendant that he had just been robbed while attempting to sell cocaine, and Defendant responded by directing Coronado to go "shoot up" the house he was robbed at. *Id.* After hanging up with Coronado, Defendant called Codefendant Gregory Hayes to explain the situation and ask if Hayes knew who the robbers were. *Id.* According to the Government, Defendant also told Hayes that he told Coronado to "shoot up" the house and "either retrieve what was taken or Coronado was to give Delgado one of the individuals who had robbed him." *Id.*

After hearing these calls, FBI agents notified local law enforcement officers, who arrested Defendant, Coronado, and Hayes the same day, before the shooting could occur. *Id.* at PageID.3759. After obtaining a warrant, officers searched Defendant's Dixie Court House and located "14 kilograms of cocaine, narcotics packaging, a money counter, nearly $200,000[,] approximately 13 firearms, drum-style high-capacity magazines, parts to make firearms operate as

- 6 -

machine guns, silencers, and ammunition." *United States v. Delgado*, No. 1:22-CR-20187-1, 2023 WL 5500833, at *1 (E.D. Mich. Aug. 25, 2023) (citing ECF No. 395 at PageID.1430).

Defendant was indicted for conspiracy to possess with intent to distribute cocaine, 21 U.S.C. §§ 846 and 841(a)(1), possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1), possession of a firearm in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), and use of a communication facility in causing a felony, 21 U.S.C. § 843(b). ECF No. 47.

### C.

Two superseding indictments added Codefendants over the next six months. *See* ECF Nos. 67; 176. After the Second Superseding Indictment, there were 15 Codefendants indicted and identified as part of the alleged drug distribution conspiracy. *See* ECF No. 176. The motion cutoff date was June 16, 2023, ECF No. 356 at PageID.1182, and several Defendants—including Delgado—filed pretrial motions that were timely addressed by this Court. *See* ECF Nos. 314; 315; 320; 322; 323; 377; 378; 379.

The Scheduling Order was adjourned to permit all Defendants adequate time to engage in plea negotiations, *see* ECF No. 443, and by November 2023, all but Defendant Delgado had pleaded guilty. *See* ECF No. 532. At that point, the Parties agreed to further adjourn the schedule to allow the United States Probation Office to prepare a pre-plea presentence investigation report (PSR). *Id.* The pre-plea PSR was completed one week before the final pretrial conference, but Defense Counsel filed a motion seeking to adjourn the trial because he was having difficulty visiting Defendant at his pretrial detention facility. ECF No. 598. Counsel for both Defendant and the Government attended a status conference on March 5, 2024, agreed to a 41-day adjournment, and noted that they were engaged in plea negotiations. ECF No. 605. Yet, on April 15, 2024, Defense Counsel filed another Motion to Continue the final pretrial conference and jury trial to

early July 2024 because he needed additional time to prepare for trial in light of two deaths in his immediate family. ECF No. 627 at PageID.3552–53. This Court granted Defense Counsel's Motion in part, and scheduled Defendant's jury trial to start on June 20, 2024. ECF No. 631.

Also on April 15, 2024, Government Counsel emailed Defense Counsel and informed Defense Counsel that while "going through the physical evidence seized from" Defendant's house, "it became apparent" that Defendant possessed "multiple machineguns" and additional kilograms of controlled substances. ECF No. 662 at PageID.3810. Government Counsel also "noted that he had been under the impression that [Defendant] allegedly possessed auto sears and was mistakenly unaware that Delgado possessed fully functioning machine guns." *Id.* Accordingly, Government Counsel explained "that he would honor the plea negotiations that had taken place previously but that a third superseding indictment alleging possession of a machinegun in the furtherance of a drug trafficking crime, felon in possession of a firearm, and possession of a silencer would all be sought if a resolution was not agreed to." *Id.* at PageID.3811. The Government reports that it "followed up" with Defense Counsel on April 30, 2024 "to inquire if a plea negotiation could be accomplished before moving on with a superseding indictment." *Id.* Defense Counsel responded that he was planning to meet with his client, and Government Counsel replied on May 1, 2024, by email "a copy of a proposed third superseding indictment that was essentially identical to the indictment that was filed on May 15, 2024." *Id.* Government Counsel "contacted" Defense Counsel again on May 9, 2024, but no response was received "expect for the filing of the six defense motions on May 15, 2024." *Id.* Understanding that no plea agreement would be reached, the Government filed the Third Superseding Indictment on May 15, 2024. ECF No. 647.

The Third Superseding Indictment contains the same charges against Defendant as alleged in the Second Superseding Indictment, *see* ECF No. 176, but adds the following charges: (1)

- 8 -

possession with intent to distribute fentanyl, 21 U.S.C. § 841(a)(1); (2) possession of a machinegun in furtherance of a drug-trafficking crime, 18 U.S.C. § 924(c)(1)(A) and (c)(1)(B)(ii); (3) possession of a machinegun, 18 U.S.C. § 922(o)(1); (4) felon in possession of a firearm, 18 U.S.C. § 922(g)(1); and (5) possession of an unregistered silencer, 26 U.S.C. § 5861(d). ECF No. 647. It also seeks sentencing enhancements under 21 U.S.C. §§ 841(b)(1)(A)(ii)(II) on two of the existing cocaine-distribution counts and the new fentanyl-distribution count. *Id.* at PageID.3703–10.

On the same day the Government filed the Third Superseding Indictment, Defendant filed six pretrial motions. ECF Nos. 641; 642; 643; 644; 645; 646. Four of Defendant's Motions were denied, but Defendant's Motions seeking early discovery under the Jencks Act, ECF No. 642, and transcripts of the Agent Wohlfert's grand-jury testimony, ECF No. 644, were granted with the Government's concurrence. ECF No. 657. The week of the final pretrial conference, Defendant filed three more motions: a motion to continue, ECF No. 659, a motion to dismiss the indictment as vindictive, ECF No. 660, and a motion seeking a bill of particulars, ECF No. 663. All three motions were discussed at the final pretrial conference on May 29, 2024, and were denied on May 31, 2024. ECF No. 670.

On June 3, 2024, Defendant filed an additional pretrial motion, this time arguing that Agent Wohlfert knew that "Unknown Male" was Defendant as early as February 20, 2022 yet intentionally omitted this identification throughout his three subsequently-filed affidavits.[3] ECF No. 671. Accordingly, Defendant seeks to suppress, on Fourth Amendment grounds, the fruits of

---

[3] Notably, Defendant has previously challenged the sufficiency of all three of these affidavits more than a year ago, *see United States v. Delgado*, 682 F. Supp. 3d 661, 665–66 (E.D. Mich. 2023). And though Defendant alleges this challenge is based on "***newly discovered***" evidence, ECF No. 671 at PageID.3877 (emphasis in original), the Government notes that all information Defendant relies on in his Motion was either (1) provided to Defendant by the Government on February 8, 2023 and again on August 23, 2023; or (2) has always been known to Defendant "because it relates to his own supervised release, employment, house, and travel[]." ECF No. 675 at PageID.4054.

all searches authorized by Wohlfert's three affidavits.[4] *Id.*

The Government responds that Agent Wohlfert did not know Defendant's identity, and that Defendant's "conclusory attack" on the affidavit "leaps from conclusion to conclusion with no evidence connecting the dots." ECF No. 675 at PageID.4053. And, the Government adds, even if Agent Wohlfert *did* know Unknown Male's identity, his identity immaterial to the probable-cause at issue in each warrant or wiretap request. *Id.* at PageID.4056.

## II.

The Fourth Amendment protects people from unreasonable searches and seizures by requiring a warrant based on probable cause, subject to some exceptions. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). Probable cause is "reasonable grounds for belief, supported by less than prima facie proof but more than mere suspicion." *United States v. King*, 227 F.3d 732, 739 (6th Cir. 2000) (quoting *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir. 1990)). This "is not a high bar: It requires only the 'kind of fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States*, 571 U.S. 320, 338, (2014) (quoting *Florida v. Harris*, 568 U.S. 237 (2013)).

In order to establish probable cause, the affidavit in support of a search warrant or wiretap must present "facts that indicate a fair probability that evidence of a crime will be located on the premises of the proposed search." *United States v. Crumpton*, 824 F.3d 593, 615 (6th Cir. 2016); *see also United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc) (requiring a "nexus between the place to be searched and the evidence sought.").

---

[4] It is not entirely clear which search-warrant affidavit Defendant is challenging in his June 3 Motion, but Defendant mentions only the February 20, February 28, and March 2 search-warrant affidavits, so this Court will focus its analysis on those search-warrant affidavits. *See* ECF No. 671 at PageID.3877 ("Specifically, *inter alia*, on February 20, 2022, February 28, 2022, and March 2, 2022 warrants were requested.").

"[T]he obvious assumption" made regarding the probable-cause requirement "is that there will be a truthful showing." *Franks v. Delaware*, 438 U.S. 154, 164–65 (1978) (quoting *United States v. Halsey*, 257 F. Supp. 1002, 1005 (S.D.N.Y. 1966)). A statement in an affidavit is deemed truthful if it is "believed or appropriately accepted by the affiant as true." *Franks*, 438 U.S. at 165.

In order to obtain a *Franks* hearing, Defendant must (1) "make a substantial showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement or material omission in the affidavit"; and (2) "prove that the false statement or material omission is necessary to the probable cause finding in the affidavit." *United States v. Bateman*, 945 F.3d 997, 1008 (6th Cir. 2019). If the defendant satisfies both requirements, then the falsity or omission is set aside for the court to reevaluate whether the remaining content in the affidavit is "sufficient . . . to support a finding of probable cause." *Franks*, 438 U.S. at 171–72. If it is not, then the defendant is entitled to a *Franks* hearing under the Fourth Amendment. *Id.* at 172.

### III.

Defendant alleges that Agent Wohlfert "intentional[ly]" omitted material facts in his search-warrant affidavits, "specifically, knowledge of the identity of the 'Unknown Male.'" ECF No. 671 at PageID.3882. Accordingly, Defendant seeks a *Franks* hearing to challenge all three affidavits.

#### A. The February 20, 2022 Search-Warrant Affidavit

Defendant alleges Agent Wohlfert omitted the material fact that Defendant was on probation and registered to an address on West Grand Boulevard in Detroit, Michigan, in Agent Wohlfert's February 20, 2022 search-warrant affidavit in support of a warrant for cell phone GPS data. ECF No. 671 at PageID.3880. But probation records are court records and Defendant has not

even suggested, let alone corroborated, that Agent Wohlfert had access to search records of the United States Probation Office. *See* Guide to Judiciary Policy, Vol. 20, Ch. 8, § 840(b)(1) (Revised July 5, 2016) (noting supervised-release files may be disclosed only upon authorization from a district judge); *see also United States v. Harris*, 635 F.2d 526, 528 (6th Cir. 1980) ("[T]he probation office is an arm of the court."). Thus, Defendant has not shown that Agent Wohlfert knowingly and intentionally, or with reckless disregard for the truth, omitted material information in his search-warrant affidavit. And even if Defendant did make such a showing, Unknown Male's identity was not necessary to any finding of probable cause for the search warrant. Indeed, the affidavit outlines several phone calls between Unknown Male and a coconspirator about drug trafficking, which is enough to suggest that Unknown Male—regardless of his identity—is engaged in drug distribution. Accordingly, Defendant is not entitled to a *Franks* hearing relating to the February 20, 2022 search-warrant affidavit.

### B. The February 28, 2022 search-warrant affidavit

Defendant next argues that the February 28, 2022 affidavit in support of a search warrant for cell-tower information near the Dixie Court House contained material omissions because, according to Defendant, "a simple record search" would reveal that Defendant's father owned the Dixie Court House. ECF No. 671 at PageID.3881. But public record ownership is not mutually exclusive with use. A "simple record search" says nothing about who *used* the Dixie Court House generally, nor does it discredit Agent Wohlfert's suspicion that Defendant—Unknown Male at the time—was using the house to traffic cocaine.

And even if Agent Wohlfert *did* know that Defendant's father owned the Dixie Court House, and *did* know Defendant's identity, the *identity* of Defendant, again, is immaterial to the finding of probable cause in the February 28, 2022 search-warrant affidavit. Indeed, as explained

by Agent Wohlfert, a central focus of the sought-after search was to identify unknown cellular *devices* thought to be used near the Dixie Court House in connection with suspected trafficking. And the affidavit outlined five phone conversations, *see supra supra* Section I.A.ii., that sufficiently support a finding of probable cause that Defendant was involved in drug distribution and utilized more than one cell phone. Thus, Defendant is not entitled to a *Franks* hearing regarding this search-warrant affidavit, either.

### C. The March 2, 2022 affidavit in support of wiretap authorization

Finally, Defendant argues the March 2, 2022 affidavit in support of the wiretap contains material omissions because Agent Wohlfert already knew Defendant's identity from pole-camera footage and GPS data. ECF No. 671 at PageID.3881.

Defendant asserts that Agent Wohlfert knew Defendant's identity because Defendant "booked and boarded" a flight to New Orleans, Louisiana, where he stayed from February 26 through March 2. *Id.* at PageID.3881–82. Thus, Defendant argues, the corresponding GPS data about Defendant's movement shows that Agent Wohlfert was aware of Defendant's trip to New Orleans *and* his identity. *Id.* But Defendant does not explain *why* knowledge of Defendant's *movement* between Michigan and New Orleans equates to knowledge of his *identity*. *See id.* Indeed, it is not clear *how* Agent Wohlfert would have been able to identify Defendant based on him being one of more than a hundred people on a particular flight from Detroit to New Orleans based upon only GPS and cell-tower data related to devices used surrounding the Dixie Court House. Defendant makes much of the fact that all travel and accommodations for the trip were "purchased and paid for in his name with his personal credit card." ECF No. 671 at PageID.3882. But the FBI was not tracking Defendant's credit card. So Agent Wohlfert would not have had any knowledge of Defendant's credit-card purchases. All Agent Wohlfert might have known from GPS

data would be that Unknown Male was *one person* who traveled to New Orleans from Detroit on February 26, 2022, and returned to Detroit on March 3, 2022.

And to the extent Defendant attempts to argue that Agent Wohlfert knew Defendant's identity by way of pole-camera footage from the pole camera installed at the Dixie Court House on February 24, 2022, *see* ECF No. 671 at PageID.3877–78, Agent Wohlfert noted in his affidavit in support of the wiretap that the pole-camera footage had not yet provided a *clear enough* image of the Unknown Male to *fully* establish his identity. But Defendant has not shown that Agent Wohlfert *knew* Defendant's identity.

And even if Agent Wohlfert *did* know Defendant's identity and all statements about Defendant's identity were scrubbed from the affidavit in support of the wiretap of Defendant's phone, there is still sufficient probable cause in the affidavit to authorize the wiretap. To that end, there is substantial information about the investigation *up to that point*, and details from multiple cell-phone conversations that suggest that Defendant—regardless of his known or unknown identity—was involved in the drug-trafficking conspiracy and connected with the supplier.

In sum, Defendant is not entitled to a *Franks* hearing regarding any of the challenged affidavits because he has not shown that Agent Wohlfert intentionally omitted information that he knew or should have known, nor that the identity of Unknown Male was necessary to the finding of probable cause for any of the challenged affidavits. Thus, Defendant's Motion will be denied.

**IV.**

Accordingly, it is **ORDERED** that Defendant Ricardo Delgado II's Motion to Suppress and Demand for a *Franks* Hearing, ECF No. 671, is **DENIED**.

Dated: June 12, 2024    s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge